# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 94-KA-00530-SCT

*GEORGE PERRY A/K/A GEORGE PERRY, JR.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/01/94 |
| TRIAL JUDGE: | HON. R. KENNETH COLEMAN |
| COURT FROM WHICH APPEALED: | MARSHALL COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | THOMAS C. LEVIDIOTIS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOLENE M. LOWRY |
| DISTRICT ATTORNEY: | LITTLE, LAWRENCE L., |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/24/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/14/96 |

**BEFORE SULLIVAN, P.J., ROBERTS AND SMITH, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. On March 1, 1994, George Perry was convicted in the Circuit Court of Marshall County of sale of a controlled substance and sentenced to thirty years in the custody of the Mississippi Department of Corrections with ten years suspended. Aggrieved, Perry argues that the trial court erred in denying both the Motion for Directed Verdict and the post-trial motion for JNOV/New Trial. At trial, Perry relied upon the defense of entrapment and now argues the State failed to rebut his prima facie case with sufficient evidence of his predisposition to sell cocaine. Perry also argues he was denied effective assistance of counsel because the rebuttal witness for the State was represented in the past by Perry's trial counsel, Mr. Clencie Cotton. Specifically, Perry argues that Mr. Cotton was prohibited from effectively cross-examining the rebuttal witness due to the prior representation.

¶2. The State argues that the denial of both motions was proper in light of the evidence produced by the State at trial which was sufficient to rebut Perry's claim of entrapment. Further, the State argues that defense counsel was not inhibited from effectively cross-examining the State's rebuttal witness and therefore Perry was not denied effective assistance of counsel.

¶3. Issues I and II are without merit and need not be discussed. We find only Issue III to be worthy

of discussion and after thorough consideration we find it to be without merit. We affirm the lower court's ruling.

## STATEMENT OF THE FACTS

¶4. On April 27, 1992 Mississippi Bureau of Narcotics agent Bobby Tillman was working with a drug task force in Holly Springs, Mississippi. The task force was a cooperative endeavor between the Mississippi Bureau of Narcotics, hereinafter "MBN" and the Federal Bureau of Investigation, hereinafter "F.B.I". William Spry was a cooperative witness who was utilized to aid the task force in making drug buys by identifying drug dealers in the area. One such dealer was George Perry.

¶5. At approximately 4:00 p.m. William Spry accompanied Agent Tillman to the Courtesy One Shop where George Perry was employed at a car wash. Agent Tillman and Spry approached Mr. Perry and inquired as to whether Perry could provide them with $100 worth of crack cocaine. Perry agreed and instructed Agent Tillman and Spry to wait in the parking area. Perry did not immediately leave the scene. However, after Spry indicated that they would give Perry the money, Perry went into an alley area and returned with six rocks of a substance which appeared to be crack cocaine. Perry transferred the rocks to Agent Tillman and Perry received one hundred dollars. The entire transaction was recorded with a device placed upon William Spry. After receiving the rocks, Agent Tillman placed the substance into a plastic bag, marked it for identification and transferred the rocks to Mississippi Bureau of Narcotics Agent Chuck Smith. The substance was later delivered to the Mississippi Crime Lab at Batesville where testing confirmed that the substance was cocaine-based.

¶6. George Perry was arrested and tried for the sale of a controlled substance. Perry was represented by Mr. Clencie Cotton at trial where the defense contended that Perry was entrapped. The trial court denied Perry's motion for a directed verdict and submitted the case to the jury with instructions on the entrapment defense. After deliberating for approximately thirty minutes the jury returned a guilty verdict whereupon the trial court sentenced Perry to thirty years in the custody of the Mississippi Department of Corrections with ten years suspended. On March 22, 1994, the trial court denied Perry's motion for JNOV/New Trial.

## DISCUSSION OF LAW

### WHETHER THE DEFENDANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL.

¶7. Perry assigns as error the denial of the post-trial motion for JNOV/New Trial based on ineffective assistance of counsel. Perry argues that trial counsel was faced with a conflict of interest due to his prior representation of William Spry, the State's rebuttal witness. As a result, Perry argues that counsel was prohibited from effectively cross-examining Spry in order to impeach his credibility.

¶8. Perry's focus is on the interchange between William Spry and Mr. Cotton on cross examination. It is obvious from the record that Mr. Cotton was attempting to impeach Spry's credibility by establishing Spry's own criminal activity and alleged "deals" with the State. During this line of questioning, Spry testified that he was charged with and pled guilty to unrelated charges in Tupelo, Mississippi for which he was currently in jail. Spry testified that the incident giving rise to these

charges occurred after Spry's participation as the cooperating witness in the Perry case. Counsel also sought to establish that Spry had in fact made a deal with the State after his testimony in another drug case in Marshall county. Spry denied making any deals with the State in exchange for testimony.

¶9. During the examination of Spry it was revealed that Mr. Cotton represented Spry during prior plea negotiations.

> Mr. Cotton: As a matter of fact, you were offered a deal, weren't you?
>
> By Mr. Spry: No, sir.
>
> By Mr. Cotton: You were not offered a deal.
>
> By Mr. Spry: If I was offered a deal, I wouldn't be going to the penitentiary.
>
> By Mr. Cotton: Well, you were offered a deal in Marshall County weren't you?
>
> By Mr. Spry: No, sir. I wasn't offered a deal at all.
>
> By Mr. Cotton: What sentence did you get over here, Mr. Spry?
>
> By Mr. Spry: I was sentenced to five years for the auto theft and five years for the burglary, and they would run concurrent.
>
> By Mr. Cotton: And that happened after you testified in the court on behalf of the State. Is that correct?
>
> By Mr. Spry: Well, you was my attorney.
>
> By Mr. Cotton: Is that correct?
>
> By Mr. Spry: That's correct.

¶10. Perry argues that during the above testimony "the witness was not telling the truth and counsel was estopped from impeaching the witness because to do so he would have to have used his own personal knowledge that the witness indeed had made a deal." As a result, Perry argues the witness was allowed to testify without his credibility being sufficiently challenged. Perry argues that this omission could have been cured had Mr. Cotton been allowed to state "Now Mr. Spry, you are lying through your teeth because you and I both know you made a deal because I negotiated the deal for you with the prosecution." As a result of Mr. Cotton's inability to make such statements Perry argues he was denied effective assistance of counsel and is therefore entitled to reversal.

¶11. In reviewing the effectiveness of counsel, this Court uses the following standard.

> The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The test is two pronged: The defendant must demonstrate that his counsel's performance was deficient, and that the deficiency prejudiced the defense of the case. *Strickland*, 466 U.S. at 687; *Washington v. State*, 620 So.2d 966 (Miss. 1993). This requires showing that counsel's

errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable. *Stringer v. State*, 454 So.2d 468, 477 (Miss. 1984), *citing* **Strickland v. Washington**, 466 U.S. at 687. In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. *Stringer* at 477, citing **Strickland**, 466 U.S. at 688; **Tokman v. State**, 564 So.2d 1339, 1343 (Miss. 1990).

**Foster v. State**, 1996 WL 255476, (Miss. 1996). Thus, the inquiry on appeal is whether, in light of the totality of the circumstances, Perry's trial counsel was so ineffective as to undermine the reliability of the proceedings below.

¶12. The first prong of the **Strickland** analysis requires Perry to demonstrate that his counsel's performance was deficient. In the case *sub judice*, the challenge to the effectiveness of counsel is not one of competence, but rather one of loyalty. In **Smith v. State**, 666 So.2d 810, 812 (Miss. 1995), this Court held "[t]he effective right of counsel encompasses the right to representation by an attorney who does not owe conflicting duties to other defendants." (*quoting* **Stringer v. State**, 485 So.2d 274, 275 (Miss. 1986)). "Moreover, undivided loyalty of defense counsel is essential to the due process guarantee of the Fifth Amendment." **Littlejohn v. State**, 593 So.2d 20, 23 (Miss. 1992) (*citing* **Alvarez v. U.S.**, 580 F.2d 1251, 1256 (5th Cir. 1978)).

¶13. The first level of inquiry under **Smith**, is whether Perry's counsel was faced with an actual conflict of interest by virtue of his prior representation of William Spry. In **Smith**, the defendant and Latham both sold drugs to undercover officers. However, Latham, while a participant in the double sale, was not indicted but rather testified against Smith. Smith's public defender represented Latham during plea negotiations and therefore possessed information regarding Latham's negotiations with the State. During cross-examination of Latham, defense counsel asked whether Latham had pled guilty to a charge. Latham, like Spry in the case *sub judice*, responded, "You was [sic] my lawyer, you could tell me."

¶14. This Court concluded that the situation in **Smith** presented an actual irreparable conflict of interest. "An attorney under normal cross-examination would have explored Latham's answers further." **Smith,** 666 So. 2d at 812. "Instead, the cross-examination was terminated prematurely and this Court is left to wonder why." **Id.** "Obviously, this line of questioning exposed a real conflict of interest which could be remedied by the court ordering a mistrial." **Id.** The public defender continued to represent Latham until his case was retired to the files, further indicating to this Court that the "action of retiring the case to the files was taken to reward Latham for his cooperation with the State in testifying against Smith." **Id.** In light of the fact that Latham's testimony became a "centerpole" of the State's case, this Court reasoned "[i]t is difficult to conclude that Latham had nothing to gain or lose by his answers in a situation where he was not yet indicted in the simultaneous double sale of drugs." **Id.** at 813.

¶15. The crux of the **Smith** decision was the dual representation of an unindicted co-participant by an attorney who represented that participant in plea negotiations with the State while simultaneously representing the defendant against whom the participant would testify. Moreover, the co-participant was the "centerpole" of the State's case against Smith. As a result, defense counsel faced a conflict of

interest which prohibited him from effectively cross-examining Latham.

¶16. The case *sub judice* is clearly distinguishable from Smith. First, we are not faced with a conflict arising from dual representation. At the time of trial, Cotton did not represent William Spry although he had done so in the past on *unrelated matters*. In addition, we are not faced with the situation where Cotton represented Spry in negotiations wherein Spry would plead guilty in exchange for testimony against Perry. Rather, the subject of cross-examination in the instant case is Spry's prior deals with the State to exchange his testimony for plea agreements, i.e. Spry's role as a professional witness. Therefore, the prior representation of Spry by Mr. Cotton did not concern Perry and as a result did not present the type of conflict present in **Smith**.

¶17. More importantly, we find that William Spry was not the "centerpole" of the State's case against George Perry. William Spry was called by the State as a rebuttal witness. Prior to Spry's testimony, the State presented Agent Tillman, Agent Smith, and Carole Abel. Agent Tillman identified George Perry and described the transaction which took place. Agent Smith testified to the transaction as well as the chain of custody of the crack cocaine and was followed by Carole Abel who confirmed that the substance was in fact crack cocaine. William Spry's testimony was offered solely to rebut Perry's claims of entrapment and lack of predisposition.

¶18. The second prong of the Strickland test requires the appellant to demonstrate that counsel's deficiency prejudiced the defense. However, "prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance'." **Smith**, 666 So.2d 810 at 812 (Miss.1995) (*quoting* **Cabello v. State**, 524 So.2d 313, 316 (Miss. 1988)). Here, prejudice is not presumed as there was no actual conflict of interest. In **Smith**, the "sudden curtailing of what had been up to that point a vigorous cross-examination" indicated to this Court the "actual conflict of interest which adversely affected the public defender's performance." **Id.** Returning to the case at bar, the record below demonstrates that Cotton was not "suddenly curtailed" in his cross-examination, as was counsel in **Smith**, but rather proceeded onward. Moreover, Cotton proceeded to question Spry in detail about his motivation for prior testimony in another case as well as his motivation for testifying against Mr. Perry in the present case. For example:

By Mr. Cotton: So they just called you over here, and whatever you had to say--

By Mr. Spry: The truth, all they wanted was the truth. That's the only thing I'm here today is to speak the truth.

By Mr. Cotton: So, you have nothing to gain from all this.

By Mr. Spry: Nothing, sir.

* * * *

By Mr. Cotton: And you are telling us that you expected nothing and got nothing, and nobody knew what you were going to say today?

By Mr. Spry: No, sir.

¶19. The record indicates that any conflict Cotton may have sensed did not adversely affect his performance. Rather, Mr. Cotton continued to cross-examine Mr. Spry and challenge Spry's credibility.

¶20. Where no actual conflict of interest is present the appellant must demonstrate prejudice. The appellant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Mohr v. State*, 584 So.2d 426, 430 (Miss. 1991). In the instant case, Perry has failed to demonstrate that the outcome of the trial would have been different had defense counsel been allowed to further cross-examine Spry. Regardless of Spry's testimony, there was ample evidence at trial which supports the jury verdict. Even assuming defense counsel had conclusively established that Spry's sole motivation in testifying at trial was to receive a reduced sentence pursuant to an agreement with the State and therefore Spry had everything to gain or lose from testifying against Perry, there remains the vast amount of evidence presented during the State's case in chief, all of which indicates guilt. There is no merit to this issue.

## CONCLUSION

¶21. George Perry was offered an opportunity to sell crack cocaine on April 27, 1992 and he accepted that offer. Although Perry claims that he was entrapped the record below does not support an entrapment defense. Due to the overwhelming evidence of guilt presented at trial Perry has not demonstrated that the trial court erred in overruling his motion for Directed Verdict or his post-trial motion for JNOV/New Trial. There is no conflict of interest by the defense counsel present in this case. Further, the record fails to demonstrate that Perry was deprived of effective assistance of counsel.

¶22. **CONVICTION OF SALE OF A CONTROLLED SUBSTANCE, COCAINE; SENTENCED TO THIRTY YEARS IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS; TEN YEARS SUSPENDED WITH CONDITIONS AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE, ROBERTS AND MILLS, JJ., CONCUR.**