CARLTON, J.,
dissenting:
¶ 35. I respectfully dissent, and I would affirm the conviction and sentence.
¶ 36. The record reflects that sufficient evidence existed in the present case to support the jury verdict, especially in light of our standard of review, where this Court must construe all evidence in the light most favorable to the verdict. McFee v. State, 511 So.2d 130, 133 (Miss.1987); see also James v. State, 86 So.3d 286, 297 (¶ 46) (Miss.Ct.App.2012) (“On review, we find, viewing the testimony in the light most favorable to the verdict, reasonable jurors could have found [the appellant] guilty.”).
¶ 37. In his appeal, Hibbler raises claims of ineffective assistance of counsel. Specifically, Hibbler asserts his counsel failed to thoroughly conduct a pretrial investigation or interviews and deficiently examined witnesses. Mississippi jurisprudence applies the standard from Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to such claims. See Collins v. State, 70 So.3d 1144, 1147 (¶ 16) (Miss.Ct.App.2011). Our supreme court has explained that a strong rebuttable presumption exists that trial counsel was competent and performed within the wide range of reasonable conduct expected of counsel. We further rec *844 ognize that this Court has provided the following guidance to address claims of ineffective assistance of counsel after a trial:
The question presented is not whether trial counsel was or was not ineffective but whether the trial judge, as a matter of law, had a duty to declare a mistrial or to order a new trial, sua sponte on the basis of trial counsel’s performance. “Inadequacy of counsel” refers to representation that is so lacking in competence that the trial judge has the duty to correct it so as to prevent a mockery of justice. If this Court does not reverse on other grounds and is unable to conclude that the defendant received ineffective assistance of counsel, it should affirm without prejudice to the defendant’s right to raise the ineffective-assistance-of-counsel issue via appropriate post-conviction proceedings.
Jackson v. State, 73 So.3d 1176, 1181 (¶ 20) (Miss.Ct.App.2011) (internal citations and quotations omitted).
¶ 38. I submit that the record in this case is insufficient to raise any issue of presumed prejudice based upon the acts or omissions in the performance of Hibbler’s counsel. Our jurisprudence establishes that when reviewing ineffective-assistance-of-counsel claims, prejudice will not be presumed, and the defendant must show a reasonable probability of a different outcome but for the counsel’s alleged errors. Perry v. State, 682 So.2d 1027, 1031 (Miss.1996).
¶ 39. The United States Court of Appeals for the Fifth Circuit case of Washington v. Watkins, 655 F.2d 1346, 1362 n. 32 (5th Cir.1981), discussed when prejudice may be presumed, explaining that:
no prejudice need be shown in those few instances in which an ineffective[-]assistance claim is premised not on specific acts or omissions of counsel, but instead, on the fact that “no counsel was provided, or counsel was prevented from discharging his normal functions.
(Quoting Ewing v. Williams, 596 F.2d 391, 395 (9th Cir.1979)).
¶ 40. The Washington court also cited Nelson v. Estelle, 642 F.2d 903, 905 n. 3 (5th Cir.1981), where the Fifth Circuit expressly declined to decide whether a petitioner must demonstrate prejudice in order to prevail on an ineffective-assistance-of-counsel claim on direct appeal when the ineffectiveness was premised upon “counsel’s failure to object at trial to clearly inadmissible hearsay evidence.” Washington, 655 F.2d at 1362 n. 32. The Washington court explained that “[t]he Nelson court noted that erroneous evidentiary rulings by state courts may be grounds for federal habeas corpus relief only if the erroneously admitted evidence sapped the trial of fundamental fairness[.]” Id. The Nelson court determined that the erroneously admitted evidence there failed to drain the state court proceedings of fundamental fairness. Id. The Nelson court therefore declined to provide the petitioner with “greater protection through an ineffective assistance claim than that to which he would have been entitled had he challenged the admission of the hearsay directly.” Id.
¶ 41. The Washington court further explained that petitioners must show prejudice from the alleged ineffectiveness, such as by showing how uncalled witnesses would support an alibi or by showing what critical testimony unlocated witnesses would have provided in support of the defense. Id. (citing Buckelew v. United States, 575 F.2d 515, 521 (5th Cir.1978)); United States v. Doran, 564 F.2d 1176, 1177-78 (5th Cir.1977)z. In the present case, Hibbler’s claims are based upon alleged acts or omissions of his counsel’s performance, and I submit that Hibbler *845 failed to affirmatively demonstrate how the alleged ineffectiveness substantially prejudiced his defense.
¶ 42. Hibbler fails to show a reasonable probability that the outcome would have been different absent his counsel’s alleged errors, since the record contains ample evidence and corroboration of Jane’s claim of statutory rape. To meet the standard of presumed prejudice, the defendant must show that he was actually prejudiced and overcome the existing presumption that his counsel was competent. Moore v. State, 985 So.2d 365, 368-69 (¶ 10) (Miss.Ct.App.2008). Additionally, judicial scrutiny of counsel’s performance must be highly deferential, and counsel must be presumed competent. Russell v. State, 832 So.2d 551, 560 (¶ 18) (Miss.Ct.App.2002).[8]
¶ 43. Moreover, I submit that Hibbler’s claim of ineffective assistance of counsel should not be addressed by this Court on direct appeal. Instead, this issue is more appropriately raised by a petition for post-conviction collateral relief.
¶ 44. Since the appellant’s claims in this case.relate to issues of pretrial preparation, trial strategy, and sufficiency of witness examinations, such as the cross-examination of the child victim, I submit that these claims are beyond the proper scope of direct appeal, and absent an abuse of discretion, we must affirm the factual findings of the trial judge. As this Court stated in Collins, I “cannot find that ... the jury verdict would have been different.” Collins, 70 So.3d at 1148 (¶ 18). It is well settled that “the jury determines the weight and credibility to give witness testimony and other evidence.” Id.; see also Moore v. State, 933 So.2d 910, 922 (¶ 43) (Miss.2006).
¶ 45. In this case, the trial judge conducted an evidentiary hearing after the jury verdict. The trial court denied Hib-bler’s motion for a JNOV or, in the alternative, a new trial. Viewing all evidence in the light most favorable to the verdict, I find no abuse of discretion in the trial court’s denial of Hibbler’s post-trial motions. See Taylor v. State, 744 So.2d 306, 312 (¶ 17) (Miss.Ct.App.1999) (finding we will not disturb a jury’s finding on conflicting testimony where there is substantial evidence to support the verdict). We review the factual findings of the trial court for abuse of discretion. See Rutland v. State, 60 So.3d 137, 142 (¶ 18) (Miss.2011) (motion for new trial reviewed for abuse of discretion) (citations omitted). See also M.R.A.P. 22(b).
¶ 46. A review of the record reflects sufficient evidence in support of the verdict, particularly in light of our standard of review.[9] The testimony supporting the verdict included testimony from Nurse Linda Jones, who, at the time of trial, had worked at the health department for over twenty-eight years. She testified that Hibbler told her that he had taken an *846 unspecified medication to treat bronchitis within the two weeks prior to coming to the health department for the testing at issue in this case. Jones further testified that if Hibbler had taken antibiotics to treat his bronchitis within the two weeks prior to his test, then the chlamydia infection, if any, could have possibly cleared up. Jones also explained in her testimony that Hibbler “had a positive RPR [ (rapid plasma reagin) ],” indicating he previously had syphilis when tested in 1995.[10] Hibbler’s medical records, which were admitted into evidence, reflect that Hibbler had previously tested positive for syphilis and apparently received treatment prior to the 1995 test. This evidence, along with the fact that Hibbler had tested positive for sexually transmitted diseases in the past, raises an inference that Hibbler possessed knowledge regarding sexually transmitted diseases and their treatment. The record showed Hibbler was again tested for syphilis in 2005. This time, he was nonreactive.
¶ 47. Jones further explained that when taking the medical history from Hibbler in 2005 for testing, he stated that he had last engaged in sexual intercourse on June 1, 2005. He also stated that he never used condoms. Jones stated that Hibbler failed to mention any inability to engage in sexual intercourse. She testified that he instead admitted to having sexual intercourse on June 1, 2005. This testimony contradicts and impeaches the trial testimony of Hibbler and his wife that he could not engage in sex and that he had not done so for twenty years.
¶ 48. Testimony supporting the verdict also includes that of the child victim, and this case boils down to a case of credibility. Jane’s testimony was clearly supported and corroborated by other evidence, including her behavior and ability to recall details of Hibbler’s bedroom, which was corroborated by the testimony of other witnesses. Jane testified that Hibbler raped her, and she reported the rape to her counselor.
¶ 49. The record further reflects that Travonder McCloud, who served as a mental-health therapist with Community Counseling Services, testified that Jane reported the rape to a case manager at the counseling center, who then reported the rape to McCloud. McCloud testified that she had worked with Jane approximately two years prior to the incident of sexual abuse and that after the reported incident, Jane became withdrawn. A licensed personal counselor, Carla Horne, also testified, providing support for the jury’s verdict. Horne opined that the level of detail and the hesitancy of Jane in discussing the incident were consistent with a child who had been sexually abused.
¶ 50. Additionally, the testimony of the Macon Police Chief, Robert Brown, further corroborated Jane’s description of Hib-bler’s bedroom, including the furniture and bedding. Dr. Mark Burtman’s testimony confirmed sexual activity. He explained his diagnosis that Jane suffered from chlamydia and his conclusion that her hymen was consistent with one not sexually active.
¶ 51. Based upon the foregoing, and after a review of the sufficiency of the evidence in the record, I conclude that in light of our standard of review of jury verdicts, we must affirm the trial court’s judgment. The record reflects that the evidence, along with its reasonable inferences, sufficiently supports the verdict of the jury and the conviction. See Cousar v. *847 State, 855 So.2d 993, 998 (¶ 15) (Miss.2003). Furthermore, I submit that since Hibbler’s claims are based upon alleged acts or omissions of his trial counsel. Hibbler failed to affirmatively demonstrate how the alleged ineffectiveness of his counsel substantially prejudiced his defense. Accordingly, I would affirm.

. See also Evans v. State, 725 So.2d 613, 706 (¶ 440) (Miss.1997) (if prejudice cannot be presumed from the defense counsel’s remarks at trial, then defendant’s allegations of ineffective assistance of counsel must show a reasonable probability that the outcome would have been different but for counsel’s statements); McCaleb v. State, 743 So.2d 409, 412 (¶¶ 16-18) (Miss.Ct.App.1999) (counsel not ineffective for failure to object or failure to move to quash the indictment and prejudice will not be presumed).

. The majority mistakenly claims that the dissent suggests that the United States Supreme Court based "a prima facie case of ineffective assistance of counsel on an analysis of the sufficiency of the evidence!)]” A discussion of the sufficiency of the evidence herein appears only when conducting an appellate review of the evidence in light of our standard of review for jury verdicts. See McFee, 511 So.2d at 133. The dissent addresses Hibbler's failure to show prejudice in his insufficiency claims.

. When questioned regarding whether Hib-bler had tested positive for syphilis in 1995, Jones responded that "it was a reactive test.” When asked whether that meant Hibbler had tested positive, Jones stated that he "had a positive RPR.”