# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-KA-00610-SCT

*CHARLES MOORE, JR.*

*v.*

*STATE OF MISSISSIPPI*

DATE OF JUDGMENT:      02/11/2005
TRIAL JUDGE:      HON. THOMAS J. GARDNER, III
COURT FROM WHICH APPEALED:      LEE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      LORI NAIL BASHAM
ATTORNEY FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
      BY: JOHN R. HENRY
DISTRICT ATTORNEY:      JOHN R. YOUNG
NATURE OF THE CASE:      CRIMINAL - FELONY
DISPOSITION:      AFFIRMED - 04/27/2006
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE SMITH, C.J., CARLSON AND DICKINSON, JJ.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.    Following his conviction of Aggravated Assault, Burglary of a Dwelling, and Rape, Appellant presents three suggestions of error for our careful review. The first is whether he knowingly and voluntarily waived his ***Miranda***[1] rights and his right to refuse a search of his home. The second is whether evidence collected from his home after he was arrested (allegedly without a warrant) on an unrelated charge should be excluded as "fruit of the

---

[1] ***Miranda v. Arizona***, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

poisonous tree." The final issue raised is whether the convictions were against the overwhelming weight of the evidence.

## BACKGROUND FACTS AND PROCEEDINGS

¶2. Sometime around 4:30 p.m. on June 21, 2003, Charles Moore, Jr., ("Moore") unsuccessfully attempted to call the home of his friend Chris Parker ("Parker"). At 5:00 p.m., Moore reached Parker on his cell phone. Parker informed Moore that he was in Atlanta and would be staying overnight. That evening at 10:30 p.m., Moore, Shane McCowin ("McCowin") and Andy Vail ("Vail") arrived at a club in Tupelo and started drinking heavily. After the club closed at 2:00 a.m., the three men and two women from the club went to Vail's trailer where they drank for approximately two hours. Moore left at 4:30 a.m. and claims he drove to his home in Fulton, Mississippi, sat in his car for half an hour drinking whiskey and smoking cigarettes, and then went to bed.

¶3. On that same evening, L.D.T. ("the victim" or "L.D.T."), spent the night at Parker's house where two of her friends, Jennifer Bass ("Bass") and Janie Goff ("Goff") were babysitting Parker's children. At approximately 2:30 a.m., L.D.T. went to bed on the living room couch. Some time around daylight, she was awakened by someone who was suffocating her. Her attacker was saying, "Die, bitch, die." When L.D.T. clawed her attacker's neck, the man stabbed her with an unidentified tool on both sides of her neck. The attacker told her he would kill her and the children in the house if she continued resisting. The man then vaginally and anally raped L.D.T., often talking to her during the attack.

2

¶4.     When the attacker grabbed L.D.T.'s throat from behind to facilitate penetrating her orally, his hand slipped on the blood. He slammed L.D.T. onto the couch, re-covered her with the comforter, and told her that if she peeked out from beneath the covers, he would kill everyone in the house. The attacker then left.

¶5.     Bass and Goff drove L.D.T. to the hospital where the medical staff treated her stab wounds and prepared a rape kit. The Mississippi Crime Laboratory later tested the seminal fluids found on vaginal swabs from L.D.T., but the findings were inconclusive as to whether Moore was the source. L.D.T. was discharged from the hospital that evening.

¶6.     When law enforcement officers found a phone number on Parker's caller ID which indicated a June 21, 2003 call from Moore's phone, they questioned Moore on the evening of June 22, 2003. Eight days later, Officer Scotty Reedy ("Officer Reedy") and Officer Truman Carter ("Officer Carter") arrested Moore at his workplace on a misdemeanor warrant for a bad check written in 1996. The officers drove Moore to his house, had Moore sign a consent to search form, and retrieved a set of clothes and a belt from Moore's bedroom. The Mississippi Crime Lab later conducted DNA testing on blood found on this belt and determined the stains were uniquely consistent with L.D.T.'s blood.

¶7.     Upon completion of the search, the officers transported Moore to the Lee County Sheriff's Department and booked him on the bad check charge. In the initial interview with the officers at the station, Moore signed a paper waiving his *Miranda* rights, but he made no confession. Although Moore provided a statement during a second interview in which he

3

admitted raping L.D.T., he now argues he was simply repeating information about the rape told to him by his friends McCowin and Vail. Moore claims he confessed only because Officer Terry Jones ("Officer Jones") threatened him after he gave the first statement.

¶8. On February 4, 2005, a Lee County jury found Moore guilty of Aggravated Assault, Burglary of a Dwelling, and Rape. He was sentenced to serve twenty years on the aggravated assault conviction, ten years on the burglary of a dwelling conviction, and forty years on the rape conviction, with the three sentences to run consecutively. Following denial of his Motion for Judgement of Acquittal JNOV or in the Alternative for a New Trial, Moore timely filed this appeal.

**DISCUSSION**

I.     **Whether the trial court improperly denied Moore's motion to suppress evidence.**

¶9. In reviewing the denial of a motion to suppress, we must determine whether the trial court's findings, considering the totality of the circumstances, are supported by substantial credible evidence. *Price v. State*, 752 So.2d 1070 (¶ 9) (Miss. Ct. App. 1999) (*citing Magee v. State*, 542 So.2d 228, 231 (Miss. 1989); *Nicholson v. State*, 523 So.2d 68, 71 (Miss. 1988); *Ray v. State*, 503 So.2d 222, 224 (Miss. 1986)). Where supported by substantial credible evidence, this Court shall not disturb those findings. *Ray*, 503 So.2d at 223-24.

1. Legality of the Misdemeanor Arrest

¶10. Moore argues that, at the time of the search, he was in custody following an illegal arrest. As such, he argues, any evidence collected during that search was "fruit of the poisonous tree" and should have been suppressed.

¶11. Officers Reedy and Carter, who claim they had a warrant, arrested Moore on a misdemeanor charge of writing a $4.19 bad check to Wal-Mart in 1996. The officers discovered the outstanding warrant by running Moore's name through the Justice Court database. The officers went to Moore's place of employment and informed him that he was being arrested on a warrant for a bad check. After arresting Moore, the officers transported him to his apartment where the search took place.

¶12. On January 10, 2005, Moore filed a Motion to Compel Discovery in which he requested a copy of the misdemeanor warrant. At a January 28, 2005, pre-trial hearing, Moore again requested that the State produce the original misdemeanor arrest warrant. The Justice Court file included an Affidavit, a copy of the $4.19 check to Wal-Mart, a computerized arrest form, and a disposition sheet – but no warrant. Because the State could not produce a copy of the misdemeanor warrant upon request, Moore claims that under Mississippi Code Annotated Section 99-3-7(1) and (2) (1972), his arrest was illegal. Section 99-3-7 provides:

> (1) An officer or private person may arrest any person **without a warrant**, for an indictable offense committed, or a breach of the peace threatened or attempted in his presence; or when a person has committed a felony, though not in his presence; or when a felony has been committed, and he has

reasonable grounds to suspect and believe the person proposed to be arrested to have committed it; or on a charge, made upon reasonable cause, of the commission of a felony by the party proposed to be arrested. And in all cases of arrest without warrant, the person making such arrest must inform the accused of the object and cause of the arrest, except when he is in the actual commission of the offense, or is arrested on pursuit.

(2) Any law enforcement officer may arrest any person on a misdemeanor charge **without having a warrant in his possession** when a warrant is in fact outstanding for that person's arrest. In all such cases, the officer making the arrest must inform such person at the time of the arrest the object and cause therefor. If the person arrested so requests, the warrant shall be shown to him as soon as practicable.

Miss. Code Ann. § 99-3-7(1) and (2) (1972) (*emphasis added*).

¶13. The statute clearly requires a warrant for the misdemeanor arrest. Thus, the Circuit Court was presented with a question of fact, that is, whether the officers had a warrant when they arrested Moore. The fact that the warrant could not later be produced is not conclusive proof that no warrant existed, nor does it necessarily mean the officers were not in possession of the warrant when they arrested Moore. *See **Torrence v. State***, 283 So.2d 595, 597 (Miss. 1973).

¶14. The Circuit Court was required to weigh the evidence that no warrant existed against other evidence that it did. Moore claims he never saw a warrant, and, when requested in discovery, no warrant could be produced. On the other hand, the officers testified they had an arrest warrant in their possession at the time of the arrest. According to Officer Reedy, after running a routine check of the Justice Court database, he located the physical misdemeanor warrant for Moore in the police department's file at the jail. Officers Reedy

6

and Carter claim that, with warrant in hand, they went to Moore's workplace, informed him he was being arrested because of the bad check, and showed him the actual warrant.

¶15.    Additionally, the Justice Court file included a Justice Affidavit concerning the bad check charge, a copy of the $4.19 check signed by Moore and issued to Wal-Mart, and a computerized arrest form.  The arrest form indicated in two places that a warrant had been issued for Moore's arrest on the bad check charge.  This evidence, along with the testimony of Officers Reedy and Carter, constitutes substantial credible evidence which supports the Circuit Court's findings.

¶16.    Poor record keeping does not erase the existence of the warrant.  The trial court's denial of Moore's motion to exclude the items seized from his home was supported by substantial credible evidence, and we will not disturb those findings.  As such, Moore's arrest was not illegal, and the items seized from his house after his arrest cannot be excluded as "fruit of the poisonous tree."  This portion of Moore's first assignment of error is without merit.

2.    Voluntariness of the Consent

¶17.    Moore says he did not voluntarily consent to the search of his home.  Thus, he argues, the evidence collected pursuant to this non-consensual search – specifically the blood-stained belt – should have been suppressed by the trial court.

¶18.    The United States Constitution and the Mississippi State Constitution guarantee citizens the right to be secure in their persons, houses, and possessions against unreasonable

7

and warrantless searches and seizures. U.S. CONST. AMEND IV; MISS. CONST. ART. 3, § 23. While the warrant clauses of these provisions express the general rule that law enforcement must procure a warrant based on probable cause before engaging in a search, the rule has several exceptions. The pertinent one to this discussion is the consent exception. Voluntary consent eliminates the warrant requirement. *Morris v. State*, 777 So.2d 16, 26 (Miss. 2000).

¶19.    With respect to the consent exception to the warrant requirement, this Court has established the following rule: "[i]n order for there to be a valid consent to a search not otherwise authorized by law, . . . the person searched [must] be aware he has the legal right to refuse." *Pennick v. State*, 440 So.2d 547, 550 (Miss. 1983) (*citing Smith v. State*, 98 So. 344, 345 (Miss. 1923)).[2] Consent is valid only where a person knowingly and voluntarily waives the right not to be searched. *Pennick*, 440 So.2d at 551. Knowledgeable consent is consent where the defendant, being cognizant of his rights in the property, knows of his right to refuse. *Id.* at 549-50.

¶20.    In *Jones v. State*, 607 So.2d 23, 29 (Miss. 1991), this Court clarified its rule in *Pennick* and held that, where consent is given, the State is not required to demonstrate knowledge; rather, "the burden [is] on the defendant to show impaired consent or some

---

[2]This rule is stricter than its federal counterpart established by the United States Supreme Court in *Schneckloth v. Bustamonte*, 412 U.S. 218, 234, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The U.S. Supreme Court held that the determination of whether a person validly consented to an otherwise illegal search rests on whether consent was voluntary, not on whether the party knew or was informed of a constitutional right which he then intentionally relinquished. *Id.* at 226-27.

8

diminished capacity." ***Id.*** Whether a person voluntarily consents to a search "is a question of fact to be determined by the total circumstances." ***Id***. at 27. Those considerations include:

> whether the circumstances were coercive, occurred while in the custody of law enforcement or occurred in the course of a station house investigation. The court must also look to the individual's maturity, impressionability, experience and education. Further, the court should consider whether the person was excited, under the influence of drugs or alcohol, or mentally incompetent. If the consent occurred while the defendant was being generally cooperative, the consent is more likely to be voluntary; however, if the defendant agreed and then changed his mind, the consent should be suspect.

***Graves v. State***, 708 So.2d 858, 863 (Miss. 1997) (*citing **Jones***, 607 So.2d at 27). Finally, in ***Graves***, this Court interpreted ***Jones*** as limiting ***Pennick***'s knowledgeable waiver requirement to cases where the defendant specifically claims he did not have knowledge of the right to refuse. ***Graves***, 708 So.2d at 864.

¶21. Moore argues that his consent to the search of his apartment was not knowledgeable and thus cannot be considered a valid waiver of his right against an unreasonable search and seizure. Under this Court's jurisprudence, Moore has the burden of proving that some impairment or diminished capacity prevented him from knowingly giving his consent. Moore testified he was unaware that the officers could not search his home without a warrant absent a signed consent form. He stated that he thought the officers would "go in and get the clothes anyway." According to Moore, he did not know he had a right to refuse to sign the consent form when he signed it. Moore claims that Officer Reedy did not read the consent form to him, and he did not read it for himself. As such, Moore claims he did not know, and no one informed him, that he had a right to refuse to sign the consent form. Moore also

9

points out that he only completed an eighth grade education, and he even failed the eighth grade the first time through.

¶22.    Moore's testimony starkly contrasts the testimony of Officers Reedy and Carter. Officer Carter testified that after arresting Moore on the misdemeanor warrant, the officers took Moore to his house. No threats or coercive action occurred during the drive over. According to Officer Reedy, he read the consent form to Moore. The consent form stated:

> I, [Charles Moore] having been informed of my constitutional right not to have a search made of the premises hereinafter mentioned without a search warrant and of my right to refuse to consent to such a search, hereby authorize [Sgt. Scotty Reedy, Truman Carter] to conduct a complete search of my premises located at [507 S. Cumming St. Fulton, MS].
>
> These officers or agents are authorized by me to take from my premises any letters, papers, materials or other property which they may desire.
>
> This written permission is being given by me to the above named persons voluntarily and without threats or promises of any kind.

Moore signed the form after Officer Reedy read it to him. Officer Carter testified he heard Officer Reedy read the form to Moore, and he witnessed Moore signing the document. In addition, Mike Emmons, the owner or co-resident of Moore's house, signed the consent form at approximately the same time as Moore. According to Officer Reedy, Moore was cooperative and even went with the officers to his bedroom where they retrieved his clothes.

¶23.    Looking at the totality of the circumstances, Moore has failed to prove that his consent was not voluntary or knowledgeable. Moore alleges that because he was in police custody

10

at the time of the search and has only an eighth grade education, he could not have knowingly consented to the search. However, Moore cites no authority which establishes these factors as indicative of lack of knowledge. Moore was not excited, under the influence of drugs or alcohol, mentally incompetent, or especially impressionable. The circumstances of his consent were not coercive. Moore willingly cooperated with the officers, indicating voluntary consent.

¶24. A significant factor in this particular case is the conflicting testimony of Moore and the officers as to whether the consent form was read to Moore. As it was in *Jones*, the only evidence Moore provides "to support his contention [that his consent was not knowledgeable and voluntary] is his own testimony . . . . The trial judge has sole authority in determining witness credibility. Such a determination should not be overturned without a substantial showing that the trial judge was manifestly wrong." *Jones*, 607 So.2d at 28 (*citing Mullins v. Ratcliff*, 515 So.2d 1183, 1189 (Miss. 1987)).

¶25. The trial court's denial of Moore's motion to suppress the clothes taken during the search was not an abuse of discretion. Moore's only proof that he did not knowingly waive his right to refuse the search was his own testimony, which the trial court was free to give less weight than the officers' testimony. The trial court's findings were certainly supported by substantial credible evidence. Therefore, the trial court's decision will not be disturbed, and Moore's first assignment of error on appeal is without merit.

> **II.     Whether the trial court improperly denied Moore's motion to suppress his confession.**

11

¶26.  In reviewing the trial court's denial of a defendant's motion to suppress a confession, this Court applies "the familiar general rule that since the trial court sits as the fact-finder when determining the issue of whether the accused's confession has been intelligently, knowingly and voluntarily given, we will only reverse the trial court's determination of this issue when such determination is manifestly wrong." **Glasper v. State**, 914 So.2d 708, 716 (Miss. 2005).  The determination of "whether a confession is admissible is a finding of fact which is not disturbed unless the trial judge applied an incorrect legal standard, committed manifest error, or the decision was contrary to the overwhelming weight of the evidence." **Thorson v. State**, 895 So.2d 85, 115 (Miss. 2004) (*quoting **Lee v. State***, 631 So.2d 824, 826 (Miss. 1994)).

       1.     Confession After Arrest

¶27.  Moore says his statement given while in custody following an illegal arrest must be suppressed as "fruit of the poisonous tree."  Moore acknowledges, however, that a confession given in such a situation is not *per se* inadmissible.  **Coleman v. State**, 592 So.2d 517, 521 (Miss. 1991).  Thus, Moore contends that this Court must assess the statement's ultimate admissibility by examining the five factors[3] established by the United States Supreme Court in **Brown v. Illinois**, 422 U.S. 590, 95 S.Ct.  2254, 45 L.Ed.2d 416 (1975), and adopted by this Court in **Hall v. State**, 427 So.2d 957, 959-60 (Miss. 1983).

---

[3] The five factors are: (1) the giving of the **Miranda** warnings and the circumstances; (2) the temporal proximity of the arrest and confession; (3) the presence of intervening circumstances; (4) the purpose and flagrancy of the official misconduct; and (5) any other relevant circumstances. **Brown**, 422 U.S. at 603-04.

12

¶28.    We need not engage in the requested **Brown** analysis because, as discussed *supra*, Moore's arrest was not illegal.  Moore gave a statement while he was in custody pursuant to a lawful arrest.  As such, **Brown** and **Hall** are inapposite, and Moore's argument that the statement was "fruit of the poisonous tree" consequently fails.  *See* **Glasper v. State**, 914 So.2d 708, 722 (Miss. 2005); **Jones**, 841 So.2d at 127.  This portion of Moore's second assignment of error is meritless.

    2.    Freely and Voluntarily Given Waiver of **Miranda** Rights

¶29.    Moore argues that his confession should be suppressed because it was not freely and voluntarily given.  First, Moore states he did not understand what he was doing when he signed the **Miranda** waiver.  Second, Moore claims he was threatened with bodily injury by a police officer if he did not confess to the crimes.

¶30.    "Absent a knowing and intelligent waiver of rights, statements made by a suspect while under 'custodial interrogation' are inadmissible at trial where prior to making the statements, the suspect was not **Miranda** warned."  **Tolbert v. State**, 511 So.2d 1368, 1374 (Miss. 1987) (*citing* **Miranda**, 384 U.S. at 444-45, 478-79).  "The general rule is that for a confession to be admissible it must have been given voluntarily and not given because of promises, threats or inducements."  **Dancer v. State**, 721 So.2d 583, 587 (Miss. 1998).  "[T]he prosecution shoulders the burden of proving beyond a reasonable doubt that the confession was voluntary."  **Morgan v. State**, 681 So.2d 82, 86 (Miss. 1996).  "The 'burden is met and prima facie case made out by testimony of an officer, or other persons having

13

knowledge of the facts, that the confession was voluntarily made without threats, coercion, or offer of reward.'" **Chase v. State**, 645 So.2d 829, 838 (Miss. 1994) (*quoting **Cox v. State***, 586 So.2d 761, 763 (Miss. 1991)). "The circuit court sits as fact finder when determining voluntariness of a confession, and its determination will not be reversed unless manifestly wrong." **Manix v. State**, 895 So.2d 167, 180 (Miss. 2005).

¶31. According to Moore, when Officer Reedy asked him to talk about what happened on the night of June 21, 2003, Moore responded, "[w]ell what about an attorney?" Officer Reedy then stated, "I've got to read you your rights first." The officer pulled out a piece of paper and read the rights on the first half of the sheet,[4] asked Moore if he understood those rights, and had Moore sign the bottom of the page. After signing, Moore again asked about an attorney, and Officer Reedy said, "[w]ell you just signed away your rights to an attorney." According to Moore, Officer Reedy did not read to him the second half of the paper titled "Waiver of Rights."[5] Moore did not read the waiver for himself but relied on Officer Reedy

---

[4] The first half of the waiver was titled "You Have The Following Rights" and stated:
Before We Ask You Any Questions, You Must Understand Your Rights:
(1) You have the right to remain silent.
(2) Anything you say can and will be used against you in court.
(3) You have the right to talk to a lawyer for advice before we ask you any questions and to have them present with you during questioning.
(4) If you cannot afford a lawyer, one will be appointed for you before questioning, if you wish.
(5) If you decide to answer questions now without a lawyer present, you still have the right to stop answering at any time.
(6) You also have the right to stop answering at any time until you talk to a lawyer.

[5] The "Waiver of Rights" section stated: "This is a statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me."

14

to accurately read it to him in its entirety. During his first statement, Moore said that to the best of his knowledge, he did not rape anyone the night of the crime.

¶32. Sometime while waiting in the interrogation room with Officer Jones after giving his initial statement, Moore asked to use the restroom. Moore claims that Officer Jones said, "[i]f you're not going to cooperate with us, then I'm not going to do anything to help you out. You can sit there and use the bathroom in your pants for all I care." After Officer Jones finally let Moore use the restroom, Moore says the officer grabbed his shoulder and said, "[y]ou're going to confess to this. You're going to cooperate with us. You're going to do what we tell you to do, because if you don't I can make sure that you get a bond set so high that you can't get out, and plus I can also make your stay here very unpleasant." When Moore said he could only tell them what he had been told by his friends, Officer Jones allegedly said, "[w]ell that's fine. Just we'll go over it real quick and then we'll go back to the interview room and then you can tell Scotty Reedy what you just told me." Moore says he went over his story, and Officer Jones said, "[t]hat's fine. Just word it like you were the one that did it." Moore says he then gave a second statement to the police in which he confessed to the rape, but several times during the interview when the question referred to something about which his friends had not told him, he said "I don't know" or "I don't remember."

¶33. Again, Moore's testimony differs significantly from that of the officers and documents involved. According to the officers, Moore never asked for an attorney. Moore voluntarily

15

waived his *Miranda* rights after Officer Reedy read the entire waiver to him. Moore marked the box "I have had read to me" and signed the waiver. He acted as though he understood what he was doing. According to the officers, Moore was neither threatened nor promised anything in return for his confession. Before Moore gave his second statement, Officer Reedy again brought Moore's attention to the waiver, saying, "Charles, you remember when we talked earlier that this little piece of paper I read your rights to you. Remember signing this?" to which Moore responded, "Yeah."

¶34. While the State bears the burden of proving beyond a reasonable doubt that Moore's confession was voluntary, *Morgan*, 681 So.2d at 86, the burden is met when there is testimony from officers that the confession was made without threats, coercion, or offers of reward. *Chase*, 645 So.2d at 838. The State offered evidence from three officers and provided a signed waiver as proof that Moore voluntarily confessed. The trial court had sufficient evidence before it to conclude that the State met its burden of proof. In his Order overruling Moore's motion to suppress the confession, the trial judge stated, "said statement by the defendant was made by him at a time when he had been fully advised of his Constitutional Rights, and that his statement was not the result of coercion, promises or threats and was fully and voluntarily made after having been advised of his *Miranda* rights including his right to an attorney."

¶35. As the fact finder when determining whether a confession was voluntary, the circuit court's determination "will not be reversed unless manifestly wrong." *Manix*, 895 So.2d at

16

180-81 (testimony by officer that defendant voluntarily confessed was enough to affirm trial court's overruling of defendant's motion to suppress the confession). The record reveals no basis to conclude the trial court's decision was manifestly wrong. Therefore, Moore's second assignment of error is without merit.

> **III.  Whether the trial court improperly denied Moore's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.**

¶36.    In determining whether a jury verdict is against the overwhelming weight of the evidence, the reviewing court "must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." *Walker v. State*, 881 So.2d 820, 831 (Miss. 2004) (*citing **Hubbard v. State***, 819 So.2d 1192, 1196 (Miss. 2001)).  A new trial should only be awarded if "the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction unconscionable injustice." ***Esparaza v. State***, 595 So.2d 418, 426 (Miss. 1992).  Bearing in mind this Court's standard of review, we will examine each of Moore's convictions as well as Moore's arguments supporting reversal.

1.    Aggravated Assault Conviction

¶37.    Moore contends the State failed to meet its burden of proof beyond a reasonable doubt as to the aggravated assault charge.  Moore points out that the State never offered into evidence a knife or other deadly weapon to prove that Moore caused bodily injury to L.D.T. with a deadly weapon.  Thus, Moore says, without production of a deadly weapon, the jury's

17

verdict on the aggravated assault charge was against the overwhelming weight of the evidence.

¶38. Moore's argument is without merit. The State's indictment of Moore on the aggravated assault charge alleged that Moore "did wilfully, unlawfully and feloniously commit an aggravated assault upon [L.D.T.] by attempting to cause, or purposely or knowingly by causing, bodily injury to [L.D.T.], a human being, with a deadly weapon or other means likely to produce death or serious bodily harm, by stabbing [L.D.T.] in the neck . . . ." Consistent with the requirements of Mississippi Code Annotated Section 97-3-7(2)(b), the State was not required to show that L.D.T.'s attacker used a knife or other particular weapon commonly thought of as "deadly." The State properly sought to show that Moore harmed L.D.T. with some "other means" - in this case a "Leatherman" type of tool - likely to produce seriously bodily harm. The State was not required to produce the actual tool, and the jury was free to consider its absence when weighing the evidence and making its determination. *See* ***Davis v. State***, 909 So.2d 749, 752 (Miss. Ct. App. 2005) (sufficient evidence of aggravated assault even though no razor, thought to be the weapon used in the assault, was offered into evidence); ***Smith v. State***, 818 So.2d 383, 386 (Miss. Ct. App. 2002) (sufficient evidence of aggravated assault even though no stick, thought to be the weapon used in the assault, was offered into evidence).

¶39. Given the victim's testimony about the stabbing, as well as photographs of the victim's neck wounds, and accepting as true this evidence which supports the verdict, we

18

hold the verdict was not against the overwhelming weight of the evidence. The trial court did not abuse its discretion by failing to grant Moore's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.

2.    Burglary Conviction

¶40.    Moore also says that the State failed to meet its burden of proof beyond a reasonable doubt as to the burglary charge. According to Moore, the State failed to introduce any physical evidence that Moore broke into Chris Parker's home or was ever even in the house. The investigation did not turn up Moore's fingerprints or footprints in the home, and the State did not prove forced entry into the house. Therefore, without this evidence, Moore claims the jury's verdict on the burglary charge was against the overwhelming weight of the evidence.

¶41.    Again, Moore's argument is without merit. His confession and the presence of the victim's blood on his belt, coupled with L.D.T.'s testimony, demonstrate that he was in Parker's residence when the crimes occurred. In his confession, Moore stated that the door to the house was unlocked and that he entered. Notably, the act of opening a closed, unlocked door sufficiently establishes the "breaking" element necessary for a burglary conviction. *Smith v. State*, 499 So.2d 750, 752-53 (Miss. 1986). Accepting as true this evidence which supports the verdict, we hold the verdict was not against the overwhelming weight of the evidence. The trial court did not abuse its discretion by failing to grant

19

Moore's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.

### 3.  Rape Conviction

¶42.  Finally, Moore contends that the State failed to meet its burden of proof beyond a reasonable doubt as to the rape charge.  He argues that he fully accounted for his whereabouts when the crime occurred, and he was not at Parker's residence.  Additionally, he asserts the victim could not positively identify her attacker because the room was dark and she was covered by a blanket.  Additionally, Moore points out that the seminal fluid collected from the victim's rape kit could not be matched to Moore.  Based on the lack of evidence, Moore states that the jury's verdict on the rape charge was against the overwhelming weight of the evidence.

¶43.  Moore's argument is without merit.  The jury was not bound to believe Moore's alibi testimony.  The jury determines the weight and credibility to give witness testimony and other evidence. *Johnson v. State*, 904 So.2d 162, 167 (Miss. 2005).  We may not "pass upon the credibility of witnesses and, where the evidence justifies a verdict, it must be accepted as having been found worthy of belief." *Davis v. State*, 568 So.2d 778, 781 (Miss. 1990).

¶44.  The victim identified Moore at trial by his voice.  Her blood was found on his belt, and he confessed to raping L.D.T.  Accepting as true this evidence supporting the verdict, we hold the verdict was not against the overwhelming weight of the evidence.  The trial

20

court did not abuse its discretion by failing to grant Moore's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.

## CONCLUSION

¶45.    Substantial credible evidence exists to support the trial court's overruling of Moore's motions to suppress the clothes retrieved from his home and his confession to the police.  As such, this Court will not disturb the trial court's findings.  Accepting as true the evidence supporting the jury's verdict on all three charges, we hold the trial court did not abuse its discretion in denying Moore's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.

¶46.    **COUNT I: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT III: CONVICTION OF RAPE AND SENTENCE OF FORTY (40) YEARS, WITH CONDITIONS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  SENTENCE IN COUNT I SHALL RUN CONSECUTIVELY WITH SENTENCES IMPOSED IN COUNTS II AND III. SENTENCE IN COUNT II SHALL RUN CONSECUTIVELY WITH SENTENCES IMPOSED IN COUNTS I AND III.  SENTENCE IN COUNT III SHALL RUN CONSECUTIVELY WITH SENTENCES IMPOSED IN COUNTS I AND II.  APPELLANT SHALL NOT BE ELIGIBLE FOR PAROLE AND APPELLANT SHALL PAY COURT COSTS IN THE AMOUNT OF $1,183.00. APPELLANT SHALL NOT BE ELIGIBLE FOR EARNED TIME ALLOWANCE.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY AND CARLSON, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**