ROBERTS, J.,
 

 for the Court.
 

 ¶ 1. A jury sitting before the Harrison County Circuit Court found Francisus Ar-naz Robinson guilty of forcible sexual intercourse, sexual battery, and burglary of a dwelling. In effect, the circuit court sentenced Robinson to a total of sixty-five years in the custody of the Mississippi Department of Corrections. Aggrieved, Robinson appeals and claims the circuit court erred when it (1) denied his motion to suppress a DNA test, (2) denied his motion for a mistrial based on a statement made by a witness for the prosecution, and (3) denied his motion for a judgment notwithstanding the verdict. Additionally,
 
 *711
 
 Robinson claims the cumulative effect of the errors mandates reversal. Finding no error, we affirm the judgment of the circuit court.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. In the early morning hours of October 30, 2004, sixty-three-year-old R.B. heard a strange noise coming from her window unit air conditioner. Before R.B. could call 911, a man entered her house through the window. R.B. tried to defend herself with a knife, but the intruder disarmed her, threw her to the ground, and tore off her clothes. R.B.’s attacker raped her and forced her to perform oral sex. Before he left, the assailant tore R.B.’s phone to pieces and exited through her window. R.B. used a tissue to collect some of the attacker’s semen. She then went to a neighbor’s house and called the Gulfport Police Department.
 

 ¶ 3. On December 23, 2004, Sergeant Christopher Parrish of the Gulfport Police Department was dispatched to the scene of a subsequent but separate burglary complaint. As Sergeant Parrish made his way to the scene, he saw a dark blue sedan parked on the side of the road near the location of the burglary. The driver of that car suddenly turned on the car’s headlights and left the area at a high rate of speed. Sergeant Parrish followed the car.
 

 ¶ 4. After the car stopped in the parking lot adjacent to an apartment complex, Sergeant Parrish approached the car and found Robinson inside. Robinson appeared to be asleep. Sergeant Parrish called for backup, and Officer Tommy Payne responded. Sergeant Parrish and Officer Payne asked Robinson to get out of his car. Robinson consented to a search of his car, but Robinson was not arrested at that time.
 

 ¶ 5. Approximately one month later, Sergeant George Chaix conducted a follow-up interview with R.B. R.B. told Sergeant Chaix that one night during the summer before she was burglarized and raped, a “dark[-]eolored full[-]size car” drove by her house between fifteen and twenty times. Sergeant Chaix remembered that Robinson was in a dark blue sedan the night Sergeant Parrish encountered him near a separate burglary scene approximately two miles from R.B.’s house.
 

 ¶ 6. The next morning Sergeant Chaix and Detective Heather Dailey went to Robinson’s house. Due to a recent surge of burglaries and attempted and successful sexual assault crimes in a relatively small area, Sergeant Chaix sought to confirm or exclude Robinson as a suspect. Sergeant Chaix and Detective Dailey asked Robinson whether he would accompany them to Memorial Hospital at Gulfport (MHG) to give a blood sample. Robinson agreed. Detective Dailey drove her car to MHG. Robinson rode in the front passenger seat, and Sergeant Chaix rode in the backseat.
 

 ¶ 7. Once they arrived at MHG, Sergeant Chaix asked Robinson to execute a voluntary consent form to indicate his consent to have his blood drawn. Sergeant Chaix did not have a common “voluntary consent for body search” form. Instead, Officer Chaix used a modified “consent to search” form, which he read to Robinson verbatim. That form read as follows:
 

 I,
 
 Francisus Robinson,
 
 having been informed of my constitutional right to not have a search made of the premises hereinafter mentioned without a search warrant, and of my right to refuse to consent to such a search, hereby authorized
 
 Det Sgt. Chaix and Deb Heather Dailey,
 
 Police Officers of the Gulfport Police Department, City of Gulfport, County of Harrison, State of Mississippi,
 
 *712
 
 to conduct a complete search of
 
 my body
 
 located at for
 
 blood sample.
 

 [1]
 

 Robinson signed the consent form and agreed to have his blood drawn. A subsequent DNA test indicated that Robinson’s DNA matched the DNA of the man who attacked and raped R.B.
 

 ¶ 8. A Harrison County grand jury returned an eleven-count indictment against Robinson for alleged crimes against five victims; one of whom was R.B. To be precise, Robinson was charged with three counts of sexual battery, six counts of burglary of a dwelling, forcible sexual intercourse, and attempted forcible sexual intercourse.
 
 [2]
 

 ¶ 9. Pretrial, Robinson filed a motion to suppress the evidence that stemmed from the voluntary consent form he executed prior to having his blood drawn. Robinson’s strategy was clear. A successful motion to suppress that evidence would have precluded admission of the DNA test that found his DNA was the same as that of R.B.’s attacker. The circuit court denied Robinson’s motion to suppress the DNA evidence. However, Robinson had also successfully moved to have a psychological evaluation, and the hearing on his motion to suppress took place prior to the evaluation BY Marc L. Zimmermann, Ph.D.
 

 ¶ 10. Dr. Zimmermann evaluated Robinson the day after the circuit court denied Robinson’s motion to suppress. Based on Dr. Zimmermann’s conclusion that Robinson was mildly retarded, Robinson filed a motion to reconsider his motion to suppress. Robinson intended to argue that the DNA test should be suppressed because he was not capable of knowingly and voluntarily consenting to have his blood drawn.
 

 ¶ 11. In response, the prosecution filed its own successful motion for a psychological evaluation, and William Gasparrini, Ph. D., evaluated Robinson. Dr. Gasparrini also concluded that Robinson was mildly retarded. However, expert testimony presented during the hearing on Robinson’s motion for reconsideration indicated that Robinson was capable of understanding that he did not have to consent to have his blood drawn. The circuit court ultimately denied Robinson’s motion for reconsideration, and Robinson went to trial for forcible sexual intercourse, sexual battery, and burglary of a dwelling.
 

 ¶ 12. As previously mentioned, the jury found Robinson guilty of all three counts, and the circuit court sentenced Robinson to twenty-five years for forcible sexual intercourse, twenty-five years for sexual battery, and fifteen years for burglary. Additionally, the circuit court set each sentence to run consecutively. That is, the circuit court sentenced Robinson to a total sentence of sixty-five years. Robinson filed an unsuccessful post-trial motion for a judgment notwithstanding the verdict. Aggrieved, Robinson now appeals.
 

 ANALYSIS
 

 1. WHETHER THE CIRCUIT COURT ERRED WHEN IT OVERRULED ROBINSON’S MOTION TO SUPPRESS HIS VOLUNTARY CON
 
 *713
 
 SENT TO TAKE A BLOOD SAMPLE.
 

 ¶ 13. Robinson raises two issues within this heading. First, Robinson claims the DNA evidence should have been suppressed because no one read him the standard
 
 Miranda
 
 warnings before his blood was drawn.
 
 [3]
 
 Second, Robinson claims the circuit court erred when it denied his motion to reconsider suppression of the DNA evidence because he was incapable of knowingly and voluntarily consenting to give blood. As we review both of Robinson’s claims, we are mindful of the standard of review that accompany both issues. “In reviewing the denial of a motion to suppress, we must determine whether the trial court’s findings, considering the totality of the circumstances, are supported by substantial credible evidence.”
 
 Moore v. State,
 
 933 So.2d 910, 914(¶ 9) (Miss.2006). “Where supported by substantial credible evidence, this Court shall not disturb those findings.”
 
 Id.
 

 A. Was a
 
 Miranda
 
 warning necessary before Robinson consented?
 

 ¶ 14. Robinson’s blood sample was obtained without a warrant. By virtue of the United States Constitution and the Mississippi Constitution, citizens are afforded the right to be secure from unreasonable and warrantless searches and seizures. U.S. Const, amend. IV; Miss. Const, art. 3, § 23. There are exceptions to this rule. A warrant is not required when one voluntarily consents to a search.
 
 Moore,
 
 933 So.2d at 916(¶ 18). Additionally, the familiar
 
 Miranda
 
 warnings are not required prior to a consent search unless “consent is given after a detention, illegal or otherwise, such as being taken to the police station.”
 
 Jones v. State,
 
 607 So.2d 23, 29 (Miss.1991).
 

 ¶ 15. Robinson argues that he was entitled to a
 
 Miranda
 
 warning because he was detained before he executed the voluntary consent. We disagree. “[I]t would be unrealistic to characterize every encounter between a citizen and a police officer as a seizure.”
 
 Id.
 
 at 27 (citing
 
 United States v. Mendenhall,
 
 446 U.S. 544, 554-55, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). During the first hearing on Robinson’s motion to suppress, Sergeant Chaix and Detective Dailey testified that before they left Robinson’s house, they asked Robinson whether he would accompany them to MHG so they could get a sample of his blood. Detective Dailey specifically stated that Robinson verbally consented to have his blood drawn before they went to the hospital. Detective Dailey drove her car to the hospital. It is undisputed that Robinson rode in the front passenger seat, and Sergeant Chaix sat in the backseat. There was absolutely no testimony or other evidence presented at the first suppression hearing that supported a finding that Robinson was detained before he executed the consent form.
 
 [4]
 
 Consequently, it was not nec
 
 *714
 
 essary to give Robinson the standard
 
 Miranda
 
 warnings before he executed the voluntary consent form, and the circuit court did not commit reversible error when it declined to suppress the evidence that resulted from the blood sample.
 

 B. Did Robinson possess the capacity to consent?
 

 ¶ 16. Robinson claims the circuit court erred when it found that he voluntarily consented to have his blood drawn. According to Robinson, the circuit court erred when it declined to find that his diminished mental capacity precluded the possibility that he knowingly and voluntarily consented. We disagree.
 

 ¶ 17. “Consent must be voluntary and absent diminished capacity in order to be valid.”
 
 Jones,
 
 607 So.2d at 28. “Consent is valid only where a person knowingly and voluntarily waives the right not to be searched.”
 
 Moore,
 
 933 So.2d at 916(¶ 19). When a defendant consents to a search and later claims that consent was invalid due to impaired consent or diminished capacity, that defendant bears the burden of proving his claim.
 
 Id.
 
 at (¶ 20).
 

 ¶ 18. Whether a person voluntarily consented to the search is “a question of fact to be determined by the total circumstances.”
 
 Id.
 
 (citation omitted). “Those considerations include: whether the circumstances were coercive, occurred while in the custody of law enforcement or occurred in the course of a station house investigation.”
 
 Id.
 
 Other factors for consideration are “the individual’s maturity, impressionability, experience and education.”
 
 Id.
 
 Additionally, “the court should consider whether the person was excited, under the influence of drugs or alcohol, or mentally incompetent.”
 
 Id.
 

 ¶ 19. There was no evidence that Robinson was excited or that he was under the influence of drugs or alcohol. During the initial suppression hearing, there was no evidence that anyone coerced Robinson’s consent. We have already determined that the evidence presented during the first suppression hearing demonstrated that Robinson was not in custody at the time he executed the written consent form. During the hearing on Robinson’s motion for reconsideration — in which the sole issue was whether Robinson had the mental capacity to consent — Robinson testified that he wanted to leave the hospital, but he was not allowed to do so. Sergeant Chaix and Detective Dailey disputed Robinson’s testimony. “The trial judge has sole authority in determining witness credibility. Such a determination should not be overturned without a substantial showing that the trial judge was manifestly wrong.”
 
 Moore,
 
 933 So.2d at 918(¶ 24). Because there was substantial evidence that supported the circuit court’s decision, we cannot find that the circuit court was manifestly wrong.
 

 ¶20. As for Robinson’s maturity, impressionability, experience, education, and mental competency, the circuit court was required to weigh conflicting evidence. Robinson was twenty-three years old when he was arrested, and twenty-five when Dr. Zimmermann and Dr. Gasparrini evaluated him. Robinson was married and employed. Robinson left school after an unsuccessful third attempt at the ninth grade. Additionally, Robinson had to repeat the first grade. Robinson was in special education classes for four years, but his school records indicated that he
 
 *715
 
 was placed in special education classes for hearing problems. Still, Dr. Gasparrini opined that Robinson’s school records were consistent with a finding that he suffered from mild developmental retardation.
 

 ¶21. In
 
 Atkins v. Virginia,
 
 536 U.S. 304, 321, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), the United States Supreme Court held that the execution of mentally retarded offenders is prohibited by the Eighth Amendment.
 
 Atkins
 
 cited two definitions of “mental retardation.”
 
 Id.
 
 at 308 n. 3, 122 S.Ct. 2242. The Mississippi Supreme Court cited those definitions in
 
 Hughes v. State,
 
 892 So.2d 203, 214(1132) (Miss.2004). The first definition was from the “American Association on Mental Retardation (AAMR).”
 
 Id.
 
 According to the AAMR:
 

 Mental retardation refers to substantial limitations in present functioning. It is characterized by significantly subaver-age intellectual functioning, existing concurrently with related limitations in two or more of the following applicable adaptive skill areas: communication, self-care, community use, self-direction, health and safety, functional academics, leisure, and work.
 

 Id.
 
 That definition also required that mental retardation manifest before age eighteen.
 
 Id.
 
 (citations omitted). The second definition was that of the American Psychiatric Association:
 

 The essential feature of Mental Retardation is significantly subaverage general intellectual functioning (Criterion A) that is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety (Criterion B). The onset must occur before age 18 years (Criterion C). Mental Retardation has many different etiologies and may be seen as a final common pathway of various pathological processes that affect the functioning of the central nervous system.
 

 Id.
 
 (citations omitted).
 

 ¶ 22. In his report, Dr. Zim-mermann concluded that Robinson was retarded pursuant to the three criteria detailed by the American Psychiatric Association. Dr. Zimmermann concluded that Robinson had an IQ of 68 with a five-point margin of error. Dr. Gasparrini reached a similar conclusion. Both experts opined that Robinson was mildly retarded. “A per se involuntariness finding may be appropriate in the case of moderate or severe retardation [but it] clearly is not appropriate where, as here, the individual is mildly mentally retarded.”
 
 Neal v. State,
 
 451 So.2d 743, 756 n. 8 (Miss.1984). Dr. Zimmermann testified that, in his opinion, Robinson signed the consent form because he thought he had to sign it. However, Dr. Zimmermann also testified that Robinson could understand something as simple as “you don’t have to do this if you don’t want to.” Dr. Gasparrini also testified that Robinson should have been able to understand that he had a right to refuse consent. Sergeant Chaix and Detective Dailey both testified that Sergeant Chaix read the voluntary consent form to Robinson. Sergeant Chaix and Detective Dailey further testified that Robinson was cooperative. If the consent occurred while the defendant was being generally cooperative, the consent is more likely to be voluntary.
 
 Moore,
 
 933 So.2d at 916-17(¶ 20). After careful consideration, because there was substantial evidence that, based on the totality of the circumstances, Robinson knowingly and voluntarily executed the voluntary consent form, we cannot find that the circuit court was manifestly wrong when it denied Robinson’s motion for reconsideration.
 

 
 *716
 
 II.WHETHER THE CIRCUIT COURT ERRED WHEN IT OVERRULED ROBINSON’S MOTION FOR A MISTRIAL.
 

 ¶ 23. During the prosecution’s case-in-chief, Sergeant Chaix testified that he told Robinson that “he was suspected in a series of crimes-in a crime, rather. I’m sorry, a crime.” Robinson’s attorney objected, and the circuit court sustained that objection. Robinson’s attorney also requested a mistrial. The circuit court declined to grant a mistrial, but the circuit court instructed the jury that it was to “disregard ‘a series.’ ” Robinson claims the circuit court committed reversible error. “The decision to declare a mistrial is within the sound discretion of the trial judge.”
 
 Brent v. State,
 
 632 So.2d 936, 941 (Miss.1994). This Court will not overturn a decision to deny a motion for mistrial unless the circuit court abused its discretion.
 
 Bass v. State,
 
 597 So.2d 182, 191 (Miss.1992). The pertinent rule regarding a request for a mistrial is as follows:
 

 Upon motion of any party, the court may declare a mistrial if there occurs during the trial, either inside or outside the courtroom, misconduct by the party, the party’s attorneys, or someone acting at the behest of the party or the party’s attorney, resulting in substantial and irreparable prejudice to the movant’s case.
 

 URCCC 3.12.
 

 ¶ 24. We cannot find that the circuit court abused its discretion when it declined to find substantial and irreparable prejudice to Robinson’s case. First, it is entirely possible that the jury could have taken Sergeant Chaix’s statement and his subsequent correction as a simple mistake by Sergeant Chaix. Second, Robinson was on trial incident to a multi-count indictment. Because Robinson was on trial for three charges, the jury could have taken Sergeant Chaix’s statement regarding a series of crimes as precisely the multiple charges for which Robinson was on trial. Finally, the circuit court instructed the jury to disregard Sergeant Chaix’s statement, and the jury is presumed to follow the circuit court’s instructions.
 
 Moore v. State,
 
 787 So.2d 1282, 1291(¶30) (Miss.2001). “To presume otherwise would be to render the jury system inoperable.”
 
 Id.
 
 Accordingly, we find no merit to this issue.
 

 III. WHETHER THE CIRCUIT COURT ERRED WHEN IT OVERRULED ROBINSON’S MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT.
 

 ¶ 25. In his brief, Robinson cites and quotes the correct law regarding a motion for judgment notwithstanding the verdict. Likewise, Robinson cites the correct standard of review. However, Robinson’s
 
 entire
 
 argument in support of this issue is “the trial court was in error when it denied [his] motion for a [judgment [notwithstanding the [v]erdict, or in the alternative, a [n]ew [t]rial.”
 

 ¶ 26. Pursuant to the Mississippi Rules of Appellate Procedure, an appellant’s argument “shall contain the contentions of [the] appellant with respect to the issues presented,
 
 and the reasons for those contentions,
 
 with citations to the authorities, statutes, and parts of the record relied on.” M.R.A.P. 28(a)(6) (emphasis added). Robinson completely failed to elaborate on
 
 why
 
 he contends the evidence was insufficient to convict him. His generalized and conclusory argument is insufficient to satisfy the requirements of Rule 28(a)(6). Accordingly, this issue is procedurally barred.
 

 IV. WHETHER THE CUMULATIVE EFFECT OF THE ALLEGED ERRORS MANDATES REVERSAL.
 

 ¶ 27. We have found no individual error. It follows that there can be no cumu
 
 *717
 
 lative effect of errors that do not exist. Consequently, there is no merit to this issue.
 

 ¶ 28. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, FORCIBLE SEXUAL INTERCOURSE, AND SENTENCE OF TWENTY-FIVE YEARS; COUNT II, SEXUAL BATTERY, AND SENTENCE OF TWENTY-FIVE YEARS TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I; AND COUNT III, BURGLARY OF A DWELLING, AND SENTENCE OF FIFTEEN YEARS TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT II, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR.
 

 [1]
 

 . Italicized portions of the consent form indicate that they were handwritten. Additionally, because Sergeant Chaix did not have the common "voluntary consent for a body search” form, the word "premises” was struck through and the word "body” was handwritten above the word premises. During the suppression hearing, Sergeant Chaix and Detective Dailey testified that Sergeant Chaix made that change before he read the form to Robinson and before Robinson signed the form.
 

 [2]
 

 . Robinson successfully moved to sever those counts based on the identity of the victims.
 

 [3]
 

 . In
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that the Fifth and Fourteenth Amendments prohibit compelled self-incrimination, and prior to custodial interrogation, an accused must be advised of his right to remain silent and of his right to counsel.
 

 [4]
 

 . During the hearing on Robinson’s motion for reconsideration, Robinson testified that he did not feel compelled to accompany Sergeant Chaix and Detective Dailey. However, he also testified that he went with them because "they told me to come.” Robinson went on to testify that no one told him where they were going before they left. Robinson’s reconsideration motion was based solely on the theory that Robinson lacked the mental capacity to knowingly and voluntarily execute the consent form. Accordingly, there is nothing in the record that indicates that the circuit court reopened evidence as to whether Robinson was detained before he consented. Therefore, whether it was necessary to give
 
 *714
 
 Robinson a
 
 Miranda
 
 warning prior to executing the voluntary consent form was not at issue during the reconsideration hearing, and we will not consider those matters in our analysis.