# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2010-KA-01581-SCT

*TRAVIS KEITHLEY a/k/a TRAVIS LEE*
*KEITHLEY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/20/2010 |
| TRIAL JUDGE: | HON. MARGARET CAREY-MCCRAY |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY:  LESLIE S. LEE |
| | JUSTIN TAYLOR COOK |
| | PHILLIP BROADHEAD |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: STEPHANIE BRELAND WOOD |
| | SCOTT STUART |
| DISTRICT ATTORNEY: | WILLIE DEWAYNE RICHARDSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/18/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     In this appeal from his conviction for aggravated assault, Travis Keithley argues that it was plain error to admit into evidence the "statements" of two anonymous people, that the verdict was not supported by the evidence, and that he received ineffective assistance of counsel.  Finding no reversible error, we affirm Keithley's conviction and sentence, and dismiss his ineffective-assistance-of-counsel claims without prejudice.

## The Evidence

¶2. The majority of the inculpatory evidence was presented to the jury through the testimony of the complaining witness, Timothy Thomas. Thomas testified that, on the night of March 7, 2009, as he was leaving a store in Leland, Mississippi, Keithley confronted Thomas, accusing him of "talking noise." Thomas responded that Keithley must have had him confused with someone else, whereupon Thomas turned to walk away. According to Thomas, Keithley began following him, and when Thomas turned around, Keithley pulled out a handgun and began shooting at him. Thomas testified that he had tried to run away, but tripped and fell to the ground. Already wounded, Thomas looked up and saw Keithley standing over him. Keithley shot Thomas once more and fled. Several bystanders came to Thomas's aid, and Thomas testified that, just before losing consciousness, he told an unidentified man that he had been shot. In all, Thomas suffered six gunshot wounds.

¶3. Thomas awoke in an intensive care unit (ICU) of the University of Mississippi Medical Center. On the second day of his hospitalization, Gloria Rodgers of the Leland Police Department interviewed Thomas about the shooting. Thomas was unable to speak but gave a handwritten statement identifying Keithley as his attacker.

¶4. Officer Rodgers had been one of the first law enforcement officials to respond to the shooting incident. She testified at trial that, when she arrived, she and her fellow officers had to make their way through a crowd that had gathered after the shooting. When Rodgers reached Thomas, he was lying on the ground and was unresponsive.

2

¶5.   Officer Rodgers attempted to gather information from several people at the scene; but, according to her, most of them were afraid to get involved.  However, she did find two people who were willing to talk with her on condition of anonymity.  Rodgers gave no testimony about what these two people had told her, and the only relevant exchange during her direct examination was as follows:

> Prosecutor:   And were you able to get cooperation from anyone?  Would they talk to you?
>
> Rodgers:   Well, I had a couple of people to talk to me, but they wanted to remain anonymous.
>
> Prosecutor:   Well, during the course of your investigation that night, were you able to establish a suspect?
>
> Rodgers:   Yes.
>
> Prosecutor:   And who was that suspect?
>
> Rodgers:   Travis Keithley.

¶6.   Rodgers testified that the only physical evidence recovered at the scene consisted of one spent .380 cartridge casing and two ink pens.  None of these items was ever connected to the crime. Rodgers also gave testimony that confirmed Thomas's account of his written statement given in the ICU.

¶7.   Keithley did not testify or call any witnesses on his behalf.  The jury found Keithley guilty of aggravated assault, and he was sentenced to fifteen years in custody, with thirteen years to serve and two years of supervised probation.

***No apparent error stems from Rodgers's testimony.***

¶8.     Keithley argues that Officer Rodgers's testimony (quoted above) regarding the two anonymous people who talked to her at the scene was rank hearsay that violated Keithley's constitutional right to confront his accusers. U.S. Const. amend. VI; Miss. Const. art. 3 § 26. Because there was no objection, reversal is unwarranted absent plain error. "To constitute plain error, the trial court must have deviated from a legal rule, the error must be plain, clear or obvious, and the error must have prejudiced the outcome of the trial." ***Cox v. State***, 793 So. 2d 591, 599 (Miss. 2001) (citing ***Grubb v. State***, 584 So. 2d 786, 789 (Miss. 1991); ***Porter v. State***, 749 So. 2d 250, 260-61 (Miss. Ct. App. 1999)).

¶9.     We are unable to discern plain error resulting from Rodgers's testimony. Contrary to Keithley's characterization of the testimony, Rodgers did not testify that the two people who identified Keithley as the shooter were eyewitnesses. Moreover, she did not convey any statements or assertions made by the two anonymous people, either directly or indirectly, and she did not reveal the substance of her conversations with them. M.R.E. 801(a) (In the context of hearsay, "[a] 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person if it is intended by the person as an assertion."); ***United States v. Meises***, 645 F. 3d 5, 21-23 (1st Cir. 2011) (holding that, under ***Crawford v. Washington***, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), the Confrontation Clause is implicated if the *substance* of the out-of-court accusations is revealed).

¶10.    Rodgers's confirmation that Keithley had become a suspect "during the course of [her] investigation," was immediately preceded by her statement that she "had a couple of

4

people talk to [her]." On examination of this exchange out of context, one arguably could have suggested that the two anonymous persons had identified Keithley as the shooter. However, just before the testimony at issue, Rodgers had given a detailed account of her actions that night, and it is clear that her investigation involved much more than a conversation with these two people. Thus, examining her testimony as a whole, it is not apparent that the testimony at issue was hearsay or that the unnamed people could be classified as accusers. For these reasons, we can find no plain error arising from Rodgers's testimony.[1]

### *The verdict was supported by the evidence.*

¶11. Keithley argues that he is entitled to an acquittal or a new trial, challenging both the sufficiency and the weight of the evidence. His arguments center around the alleged identifications made by the anonymous "witnesses," the absence of any physical evidence

---

[1] Our opinion should not be read as blanket approval of lawyers' asking witnesses what they learned, or concluded, or did as a result of a conversation. Such testimony must be evaluated for its real purpose; and if the apparent purpose is to inform the jury of the content or import of an out-of-court statement, it should be treated as any other hearsay. *See Swindle v. State*, 502 So. 2d 652, 657 (Miss. 1987) (conversation of informant generally inadmissible where part of State's development of proof on the merits, but not in other circumstances for other purposes); *Meises*, 645 F. 3d at 21 (under the Sixth Amendment, "[i]t makes no difference that the government took care not to introduce [the declarant's] 'actual statements'. . . . [I]f what the jury hears is, in substance, an untested, out-of-court accusation against the defendant, particularly if the inculpatory statement is made to law enforcement authorities, the defendant's Sixth Amendment right to confront the declarant is triggered.").

implicating Keithley as the shooter, and an unsubstantiated and highly speculative claim that the victim's testimony was unreliable and a result of bias.

¶12. Rodgers's testimony about the two anonymous bystanders did not constitute an inadmissible identification, and, therefore, does not undermine the verdict. In addition, a criminal conviction does not require inculpatory physical evidence. *See Moore v. State*, 933 So. 2d 910, 922-23 (Miss. 2006) (burglary conviction not against the weight of the evidence where there was no physical evidence tying defendant to crime). Finally, any question regarding the credibility of a witness is wholly within the province of the jury. Moreover, Thomas's identification of Keithley as the shooter was uncontradicted, as was Thomas's account of the entire incident. As the sole judges of his credibility and believability, the jury was entitled to accept or reject his testimony. *Blanchard v. State*, 55 So. 3d 1074, 1079 (Miss. 2011) (citing *Moore*, 933 So. 2d at 922)). Accordingly, we find no deficiencies in the evidence that would warrant a new trial or an acquittal.

### *The ineffective-assistance-of-counsel claim is dismissed without prejudice.*

¶13. Keithley makes numerous allegations that his attorney's performance was deficient. For example, he argues that his attorney: failed to object to Officer Rodgers's testimony, put on no evidence in his client's defense, did not pursue an alibi defense, made no objection to the relevance and introduction into evidence of the .380 cartridge casing and a fingerprint card, and failed to make adequate preparation for trial. Yet, these alleged deficiencies are not "based on facts fully apparent from the record," and are more appropriate for post-conviction review. M.R.A.P. 22.

6

¶14. In *Archer v. State*, 986 So. 2d 951, 955 (Miss. 2008), this Court explained why ineffective-assistance-of-counsel claims are seldom capable of review on direct appeal:

> Ordinarily, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings. This is because during direct appeals the Court is limited to the trial court record in its review of the claim, and there may be instances in which insufficient evidence exists within the record to address the claim adequately. *Wilcher v. State*, 863 So. 2d 776, 825 (Miss. 2003). In such a case, the appropriate procedure is to deny relief, preserving the defendant's right to argue the issue through a petition for post-conviction relief. *Read v. State*, 430 So. 2d 832, 837 (Miss.1983).

¶15. It is clear that the claims raised by Keithley on this issue are not reviewable based on the record before us. He points to nothing in the record that supports his claim that his attorney failed adequately to prepare for trial. Nothing in the record indicates that there was evidence to support any particular defense, especially an alibi defense. Although Keithley says that his mother could have provided favorable testimony, nothing before us supports this assertion. As for the attorney's failure to object to the cartridge casing and a fingerprint card, Keithley does not explain how this evidence was prejudicial, and it is not clear whether relevance would have been a viable objection.

¶16. Because these alleged deficiencies require proof that is not in the record on direct appeal, we find that, in accordance with *Archer*, 986 So. 2d at 955, Keithley's ineffective-assistance-of-counsel claims do not warrant reversal at this stage and are preserved should the defendant wish to raise these issues in post-conviction-relief proceedings.

7

*Conclusion*

¶17. We find no error requiring reversal. Officer Rodgers's testimony was not inadmissible hearsay and did not violate Keithley's right to confront his accusers. Moreover, the verdict was supported by the evidence, and any issues regarding the victim's credibility were resolved by the jury. Finally, Keithley's unsubstantiated claims that his trial counsel was deficient are dismissed without prejudice and are preserved for post-conviction relief consideration, should any be sought. Accordingly, Keithley's conviction and sentence are affirmed.

¶18. **CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THIRTEEN (13) YEARS TO SERVE AND TWO (2) YEARS OF SUPERVISED PROBATION, AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**