BARNES, J.,
for the Court:
¶ 1. A Neshoba County Circuit Court jury found Ronald Collins guilty of gratification of lust. The victim was Mary Smith,[1] who was ten years old at the time. Collins was twenty-two years old. The trial judge sentenced Collins to fifteen years in the custody of the Mississippi Department of Corrections, with eight years to serve, seven years suspended, and five years of post-release supervision. Collins now appeals, raising issues regarding the weight and sufficiency of the evidence, the trial *1249 judge’s sustaining an objection by the State during the testimony of defense witness Paula Alford, and the admission of Collins’s confession into evidence. Finding no error, we affirm Collins’s conviction and sentence.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. On the evening of February 26, 2010, Collins was driving back from diesel-mechanic school in Nashville, Tennessee, and Edward and Catherine Smith invited Collins to spend the night at their home in Neshoba County, Mississippi. Collins lived down the road from the Smiths. Collins had formerly dated Margaret Smith, Mary’s older sister, and often visited the Smiths’ house even after he broke up with Margaret. Mary’s mother, Catherine, treated Collins like her own son. On the evening at issue, Catherine sent a text message to Collins at about 10:45 p.m. stating Margaret was “getting high” with her boyfriend Wayne in the living room, presumably inviting Collins over. Collins arrived at the Smith’s house at approximately 2:00 a.m., welcomed by Edward, Mary’s father.
113. Earlier that evening, Mary had gone to sleep in the living room on the sectional L-shaped couch, while Margaret and her boyfriend Wayne had fallen asleep on separate recliners in the same room. Mary awoke to find Collins had arrived at the house, and had lain on the other end of the couch to sleep. Mary could not sleep and moved to Collins’s end of the couch, laying her head on his chest. During the course of the night, Mary woke up again and felt Collins’s hand touching her private parts below her waist. His hand was inside her pajama pants and underneath her underwear. She looked at Collins and told him she could not sleep. He was awake but did not respond. Mary then got up, went to her bedroom, and dressed for school early. She returned to the living room, went back to the couch, and lay down again with her head on Collins’s chest, wearing blue jeans with a belt and a top. She fell asleep, awaking the next morning to go to school.
¶ 4. After school that day, Mary told her other older sister Martha what had happened. Together, they told their mother, who told their father. Edward then confronted Collins on the telephone about the incident. Mary’s parents and grandmother then called law enforcement, and a warrant was issued for Collins’s arrest. Later that day Collins turned himself in to the Neshoba Police Department. Officer Ralph Sciple, an investigator for the Nesh-oba County Sheriffs Office, interviewed Collins and Mary that same day. He testified that he advised Collins of his Miranda rights, transcribed Collins’s confession, and had him sign it.
¶ 5. At trial, Mary testified that she had known Collins for six or seven years. She was not sure which of Collins’s hands touched her lower private parts, but he did not penetrate her. Mary’s mother testified that Mary’s behavior changed after the incident. Mary now sleeps with her and has nightmares. Mary also developed the habit of belting her pajamas around her waist. Additionally, she will not use the restroom near the living room if there are people in the house, instead using the restroom in her parents’ bedroom. After the incident, Mary went to counseling at the Wesley House Children’s Center in Meridian, Mississippi. She also received some counseling at school. Mary and her mother both testified that prior to the incident, they had no any animosity or ill will towards Collins.
¶ 6. Paula Alford, whose son is Collins’s long-time best friend, testified that Collins injured his left arm during service with the *1250 Marine Corps, resulting in nerve damage that would not heal. Having had surgery on the ligaments of this arm, Collins has no strength in that hand. Collins was discharged from the military and then enrolled in diesel-mechanic school in Nashville.
¶ 7. Officer Sciple testified about his interview with Collins on February 27. A conference was held outside of the presence of the jury regarding the admission of Collins’s waiver-of-rights form and confession statement, both of which were ultimately entered into evidence. Officer Sciple stated Collins was advised of his Miranda, rights and signed a waiver of those rights. Officer Sciple then interviewed Collins, wrote out the statement, and had Collins sign it in two places. Collins countered that he was not advised of his Miranda rights, and he was coerced into signing the confession. The trial judge found Officer Sciple more credible and admitted the two documents into evidence.
¶ 8. After a two-day trial, the jury returned a verdict against Collins of guilty as charged.
ANALYSIS OF THE LEGAL ISSUES
I. Sufficiency and Weight of the Evidence
¶ 9. Collins challenges the weight and sufficiency of the evidence. Specifically, he argues that the State did not prove beyond a reasonable doubt that when he touched Mary, he gratified his lust and indulged in “depraved licentious sexual desires.” Moreover, he claims that even if he did put his hand in Mary’s underwear, he did not realize he had done so, as he was sleeping.
¶ 10. A motion for a directed verdict and a motion for a judgment notwithstanding the verdict (JNOV)[2] challenge the sufficiency of the evidence. Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005). The critical inquiry is whether the evidence shows “beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed.” Id. (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). All evidence will be reviewed in the light most favorable to the State, and all credible evidence consistent with the defendant’s guilt will be accepted as true. McClain v. State, 625 So.2d 774, 778 (Miss.1993). “[RJeversal can only occur when evidence of one or more of the elements of the charged offense is such that ‘reasonable and fair minded jurors could only find the accused not guilty.’ ” Stewart v. State, 909 So.2d 52, 56 (¶ 16) (Miss.2005).
¶ 11. In contrast, a motion for a new trial challenges the weight of the evidence. Ivy v. State, 949 So.2d 748, 753 (¶ 21) (Miss.2007) (citing Sheffield v. State, 749 So.2d 123,127 (¶ 16) (Miss.1999)). The reviewing court “will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844 (¶ 18). The evidence will be “weighed in the light most favorable to the verdict.” Id. “Any factual disputes are properly resolved by the jury and do not mandate a new trial.” Moore v. State, 859 So.2d 379, 385 (¶26) (Miss.2003) (quoting McNeal v. State, 617 So.2d 999,1009 (Miss.1993)).
¶ 12. Collins was convicted under Mississippi Code Annotated section 97-5-23(1) (Rev.2006), which provides:
*1251 Any person above the age of eighteen (18), who, for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch or rub with hands or any part of his or her body or any member thereof, any child under the age of sixteen (16) years, with or without the child’s consent ... shall be guilty of a felony....
We find the State presented sufficient proof of the elements of this crime.
¶ 18. Concerning the age elements, the proof is undisputed that Collins was twenty-two years old and Mary was ten years old at the time of the incident. Collins signed a confession stating he touched Mary’s private parts, even though he now claims that the confession was coerced. Mary consistently testified as to the criminal actions of Collins as well. Further, the testimony of her family members about what happened after the event are consistent with her own testimony. Additionally, Mary’s parents both testified as to certain behavioral changes in their daughter after the incident that would indicate sexual abuse.
¶ 14. Regarding the weight of the evidence, Collins attempted to east doubt on the testimony of the State’s witnesses by the testimony of Paula Alford. She testified that Collin’s left hand was injured during service in the Marines; therefore, he could not have touched Mary with that hand. However, Mary was not sure which of Collins’s hands touched her. It is well established that “the jury is the final arbiter of a witness’s credibility.” Morgan v. State, 681 So.2d 82, 93 (Miss.1996) (citing Harris v. State, 527 So.2d 647, 649 (Miss.1988)). The jury apparently found the State’s witnesses more credible. We cannot say that the guilty verdict is so contrary to the weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Therefore, the trial court did not err in denying Collins’s motions for a directed verdict and a new trial.
II. Alford’s Redirect Examination
¶ 15. Alford, the mother of Collins’s best-friend, testified for the defense. On cross-examination by the State, the following exchange occurred between the prosecutor and Alford:
Q. You don’t want to see' this young man go to prison, do you, Ms. Alford?
A. I don’t believe he did it.
Q. My question was: You don’t want to see him go to prison, do you? You can say, again, you don’t believe he did it, if you want to. Go ahead and answer the question, however you like.
A. (Pause)
[The Prosecutor]: I’ll withdraw the question.
The redirect examination by Collins’s attorney soon followed:
Q. You’ve gotten up here and made an oath to tell the truth?
[The Prosecutor]: Object, your Hon- or. Bolstering the witness.
By the Court: Sustained. There’s a presumption that she’s being truthful.
Q. Would you tell a lie in this Court for Ronald Collins, Jr.?
[The Prosecutor]: Object. Objection to—
By the Court: I’ll sustain the objection.
¶ 16. Collins argues that the State’s cross-examination implied that Alford lied on direct examination, and the two questions by defense counsel on redirect examination were relevant and thus proper. However, Collins maintains that the trial judge’s ruling sustaining the State’s objec *1252 tion appeared to find the redirect questions irrelevant, and the ruling was in error.
¶ 17. The standard of review for the admission and exclusion of evidence is an abuse of discretion. Therefore, “reversal is appropriate only when a trial court commits an abuse of discretion resulting in prejudice to the accused.” Ross v. State, 954 So.2d 968, 992 (¶ 44) (Miss.2007) (citing Irby v. State, 893 So.2d 1042, 1047 (¶ 20) (Miss.2004)). During the State’s cross-examination, Alford never answered the prosecutor’s question, ‘You don’t want to see this young man go to prison, do you?” The prosecution withdrew the question. It is difficult to understand how this unanswered, withdrawn question could “impeach” the witness, as Collins argues. Further, the prosecutor’s question was not of an “impeaching” nature, although it could properly have been used to show bias on the part of Alford under Mississippi Rule of Evidence 616. Usually, a witness is “impeached by showing statements made outside the court inconsistent with statements made on the witness stand.... ” Sims v. State, 313 So.2d 388, 391 (Miss.1975). Here, the prosecutor’s question does not necessarily imply, as Collins suggests, that Alford was lying in her direct examination testimony. Alford merely testified on direct about Collins’s arm injury, and that Collins had come to her house the night after the incident “afraid for his safety.” Therefore, Alford’s credibility was not impeached by the State’s question. We find no prejudicial effect to Collins. Accordingly, the trial judge did not abuse his discretion in sustaining the prosecutor’s objection.
III. Admission of Collins’s Confession
¶ 18. Collins’s final argument is that the trial court erred in admitting his confession into evidence, because it was involuntary. Collins claims that he was denied counsel during his interrogation; he was inexperienced in dealing with the criminal justice system; and he was forced to sign the confession under Officer Sci-ple’s threats. He also argues that the procedure of an interrogator’s hand-writing a confession that the accused signs violates the Due Process Clause of the Fourteenth Amendment.
II19. During the direct examination of State witness Officer Sciple, the State requested and was granted a conference outside of the presence of the jury over the admission of Collins’s waiver-of-rights form and confession. Officer Sciple and Collins testified during the hearing. Officer Sciple testified that he interviewed Collins alone in his office at the sheriffs department on February 27. Collins was advised of his Miranda rights and then signed a waiver-of-rights form. Officer Sciple proceeded to interview Collins about the incident and claimed Collins never asked for the questioning to stop or for an attorney. Collins testified that he requested and was denied a phone call to his mother while in custody, and that he was not advised of his Miranda rights.[3] Additionally, Collins stated Officer Sciple did not allow him to read the statement, where he confessed to the crime, and “coerced” him to sign it, telling him that if he did not sign it, he was “going to jail for life.”
¶ 20. The prosecution has the burden of proving that the confession is voluntary beyond a reasonable doubt. *1253 Moore v. State, 933 So.2d 910, 919 (¶ 30) (Miss.2006) (quoting Morgan v. State, 681 So.2d 82, 86 (Miss.1996)). The burden is met, and a prima facie case established, by the testimony of an officer, or another person having knowledge of the facts, “that the confession was voluntarily made without any threats, coercion, or offer of reward.” Id. (quoting Chase v. State, 645 So.2d 829, 838 (Miss.1994)). The trial court sits as fact-finder when determining voluntariness of a confession, and its determination “will not be reversed unless manifestly wrong.” Id. (quoting Manix v. State, 895 So.2d 167, 180 (¶ 39) (Miss.2005)). The trial court determines the vol-untariness of the confession from the totality of the circumstances. Thomas v. State, 42 So.3d 528, 535 (¶ 24) (Miss.2010).
¶21. First, we note that the defense did not file a pretrial motion to suppress the confession; instead, at trial the prosecution requested and received a hearing outside of the presence of the jury on the admission of the confession during the State’s case-in-chief. The trial judge was presented with two contradicting versions of the interrogation: Officer Sciple’s and Collins’s. Officer Sciple claimed he properly Mirandized Collins, who knowingly and intelligently waived his rights. Collins never asked for a telephone call, and provided a confession to the crime. He signed a statement that was not the product of threats or coercion. In contrast, Collins stated he was denied a telephone call and never informed of his rights. Additionally, he claims he was threatened with jail time and coerced into signing the statement, which was improperly written by Officer Sciple and never read. However, as stated earlier, the trial judge has the right to decide which witness is more reliable in this situation, and he found Officer Sciple more credible. Collins’s waiver of rights and confession were found proper and voluntary, and thus admitted into evidence. The trial judge also did not believe that Collins’s Miranda rights had been violated. We cannot find error in this regard.
¶ 22. Collins also argues that the procedure of an officer transcribing a defendant’s statement violates the Due Process Clause. This argument is without merit. The Mississippi Supreme Court has found no error in the admission of confessions that were transcribed by a law enforcement officer and signed by the defendant, as long as the statements were voluntarily, knowingly, and intelligently made. See, e.g., Underwood v. State, 708 So.2d 18, 30-31 (¶¶ 37, 39) (Miss.1998); Chisolm v. State, 529 So.2d 630, 633-34 (Miss.1988).
CONCLUSION
¶ 23. For the above-stated reasons, the judgment of the Circuit Court of Neshoba County is affirmed.
¶ 24. THE JUDGMENT OF THE NESHOBA COUNTY CIRCUIT COURT OF CONVICTION OF GRATIFICATION OF LUST AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH SEVEN YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO NESHOBA COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR.

. The names of the victim and her family have been changed to protect the identity of the victim.

. At trial, Collins’s counsel did move for a directed verdict, but Collins’s post-trial motion did not request a JNOV.

. Collins does not raise this specific issue on appeal, but after reviewing the record, we find the trial court did not abuse its discretion in finding that Collins had been apprised of his Miranda rights and that his waiver-of-rights form was valid.