MAXWELL, J.,
for the Court:
¶ 1. During Raymond Scott Petty’s trial for sexual battery, the judge admitted into evidence Petty’s handwritten, signed confession, that he penetrated his six-year-old niece’s vagina. Because the judge applied the correct legal standard, and his decision to admit the statement was not against the weight of the evidence, we find no error in denying Petty’s motion to suppress. And because sex-crime offenders are statutorily prohibited from seeking parole, we find the judge properly ordered Petty to serve the entirety of what essentially amounts to a thirty-year, day-for-day, sentence without the possibility of parole. We therefore affirm his conviction and sentence.
Facts and Procedural History
¶ 2. When Sarah’s six-year-old daughter, Annie, began having problems in elementary school, Sarah sent Annie to live with Annie’s father, James, in Philadelphia, Mississippi.[1] Sarah and James agreed Annie would stay in Philadelphia for the remainder of the school year. At the time of this arrangement, Annie’s father lived in his mother’s house with several other family members, including Annie’s three brothers and Annie’s uncle, Petty.
¶ 3. In May 2010, Annie returned home to Sarah, who started noticing Annie frequently grabbing her crotch as if she needed to use the restroom. Sarah inspected Annie and found her vaginal area was red and irritated. Though Annie initially refused to answer her mother’s inquiries, she later explained that “Uncle Scottie” had put his finger in her private area. Sarah alerted law enforcement of the alleged abuse and took Annie to the hospital, where Annie told the examining nurse what Petty had done.
¶ 4. When first questioned by police, Petty denied the allegations. But after a polygraph examination yielded inconclusive results, Petty gave a statement to Investigator Ricky Dean of the Mississippi Bureau of Investigations. In his handwritten, signed statement, Petty admitted: “I did touch [Annie] while she was lying in my lap about five months ago on the couch. Rubbed her vagina and fingered her and she rubbed my penis.”
¶ 5. Petty was arrested and charged with sexual battery under Mississippi Code Annotated section 97 — 3—95(l)(d) (Rev. 2006). At trial, the State offered testimony from Sarah, Annie, the nurse who examined Annie, and Investigator Dean. The State also introduced Petty’s written confession into evidence. Petty was convicted and sentenced to thirty-five years in the custody of the Mississippi Department of Corrections, with five years suspended, thirty years to serve, and five years of supervised probation. He now appeals.
Discussion
¶ 6. On appeal, Petty argues: (1) the trial court abused its discretion in admitting his written confession into evidence; and (2) his sentence exceeds the statutory maximum allowed under Mississippi Code Annotated section 97-3-101(3) (Rev.2006).
I. Petty’s Confession
¶ 7. Petty makes two separate arguments about the admission of his confes *662 sion — one that he raises for the first time on appeal, but did not pursue at trial — and the other he barely touches on now but consumed the entirety of his suppression hearing.
A. Violation of Right to Counsel
¶ 8. As to his first argument, which is clearly waived by his failure to address it at trial, Petty briefly claims that because his right to counsel had attached, the State’s interview undermined his privilege against self-incrimination, rendering his confession involuntary and inadmissible. Though he forfeited this issue, we recognize that “[o]nce proceedings against a defendant reach the accusatory stage, a right to counsel attaches.” Page v. State, 495 So.2d 436, 439 (Miss.1986) (citing Cannaday v. State, 455 So.2d 713, 722 (Miss.1984)). Our supreme court has defined “the advent of the accusatory stage” by referring to Mississippi Code Annotated section 99-1-7 (Rev.2007), which “provides for commencement of prosecution as occurring when a warrant is issued as well as ‘by binding over or recognizing the offender to compel his appearance to answer the offense.’ ” Page, 495 So.2d at 439 (quoting Miss.Code Ann. § 99-1-7).
¶ 9. Petty’s appellate counsel, who did not represent him at trial, claims “[Petty’s] right to counsel attached at his initial appearance or when the initial appearance ought to have been held.” But from our review — which due to Petty’s waiver is only for plain error — it appears Petty’s case was still in the investigatory stage. No indictment had been returned, and there is no record evidence of an arrest made or warrant having been issued. And Petty was not in custody and apparently consented to the polygraph examination and interview. Furthermore, before being interviewed Petty signed a Miranda[2] waiver, knowingly, intelligently, and voluntarily waiving his right to counsel. So even if prosecution had commenced, the State faced no constitutional impediment to interviewing him.
B. Voluntariness of Petty’s Confession
¶ 10. Petty’s second argument, which was raised at trial, but is hardly mentioned on appeal, challenges the voluntariness of his handwritten, signed confession to Investigator Dean. According to Petty, Investigator Dean impermissibly promised that if Petty would confess he would receive a six-month sentence for the sexual assault. Petty also insisted he was overcome with nervousness and was not in his right mind when he confessed to penetrating his six-year-old niece’s vagina. But after hearing testimony from the investigator and Petty, the trial judge was not swayed that Petty’s confession was the product of reward, coercion, or other improper means. So he denied the motion to suppress and admitted Petty’s handwritten statement.

1. Admitting a Confession

¶ 11. For a confession to be admissible it must have been voluntarily given and not the result of “any promises, threats or other inducements.” Chase v. State, 645 So.2d 829, 837-38 (Miss.1994) (citing Layne v. State, 542 So.2d 237, 240 (Miss.1989)). Before a trial judge admits a statement, the State must prove it was voluntary beyond a reasonable doubt. Moore v. State, 933 So.2d 910, 919 (¶ 30) (Miss.2006) (citing Morgan v. State, 681 So.2d 82, 86 (Miss.1996)). A prima facie case is met and this burden is satisfied if the State offers “the testimony of an officer, or another person having knowledge of the facts, ‘that the confession was voluntarily made without any threats, coercion, *663 or offer of reward.’ ” Collins v. State, 97 So.3d 1247, 1253 (¶ 20) (Miss.Ct.App.2012) (quoting Moore, 933 So.2d at 919 (¶ 30)). The trial judge, as fact-finder, “determines the voluntariness of a confession from the totality of the circumstances.” Id. (citing Thomas v. State, 42 So.3d 528, 535 (¶ 24) (Miss.2010)). And once the trial judge has determined a confession is admissible, “the defendant/appellant has a heavy burden in attempting to reverse that decision on appeal.” Sills v. State, 634 So.2d 124, 126 (Miss.1994) (quoting Frost v. State, 483 So.2d 1345, 1350 (Miss.1986)). “As long as the trial judge applied the correct legal standards, his decision will not be reversed on appeal unless it is manifestly in error, or is contrary to the overwhelming weight of the evidence.” Foster v. State, 639 So.2d 1263, 1281 (Miss.1994) (citations omitted).

2. The Suppression Hearing

¶ 12. During the mid-trial suppression hearing, Investigator Dean detailed the events of his interview with Petty. The interview took place just after the investigator deemed the results of Petty’s polygraph examination were inconclusive.[3] Investigator Dean explained that before he administered the polygraph examination, he informed Petty of his Miranda rights, and that Petty responded that he understood them. Petty then signed a form acknowledging he was voluntarily waiving these rights. According to Investigator Dean, Petty did not ask to speak with a lawyer, nor did he request a lawyer to attend his interview or polygraph examination.
¶ 13. During the post-polygraph interview, Petty admitted penetrating his six-year-old niece’s vagina with his finger and having her rub his penis. Petty gave a handwritten statement memorializing his description of the sexual battery and molestation. He then signed his statement. To ensure its accuracy, Investigator Dean read Petty’s statement back to him. And Petty made no requests to revise the statement.
¶ 14. As to the voluntariness of Petty’s confession, Investigator Dean was clear that he made no promises of reward nor offers of leniency to Petty when interviewing him in connection with the polygraph examination. Dean also maintained that he neither threatened Petty nor told him he would be better off if he confessed or cooperated.
¶ 15. But Petty seized on Investigator Dean’s response to a question he was asked on cross-examination during the suppression hearing. Petty’s attorney asked Investigator Dean whether there was any discussion during the interview about a potential sentence. And Dean testified that he did not recall whether the two had talked about a potential sentence. As Investigator Dean put it, “[i]t may have come up. I don’t remember that. But I’m not saying it didn’t happen, I just don’t remember it.” Dean testified that he did not “recollect” telling Petty that he would probably serve six months. When pressed by Petty’s attorney on whether it was “possible” a similar discussion had occurred before the interview, Investigator Dean explained:
I don’t want to say it’s not possible. Anything’s possible. But I don’t — I don’t see where I would have. I don’t see where anybody could get six months for it, not to say that they couldn’t but I don’t — that doesn’t sound reasonable, but I can’t say for sure that it didn’t happen.
*664 Petty testified next. He claimed Investigator Dean had promised him at the outset of the interview that, if he confessed, he would only serve six months to a year in prison. But if he maintained his innocence, Dean would seek the most severe penalty possible. He also claimed that Investigator Dean’s statements had caused him to become nervous, upset, and scared, and that he “wasn’t in [his] right mind” when he confessed to the crime.
¶ 16. After Petty testified, Investigator Dean was recalled by the State. He was asked:
Q: At any time during the course of your interview, did you make a threat to the defendant that if he did not confess, that you would attempt to see that he got the worst possible sentence in the case?
A: No.
Q: At any time during the course of your interview with the Defendant, did you threaten him that if he did not confess that you would just see how much time he could get?
A: No.
Investigator Dean also testified that he did not recall Petty mentioning that he was having a dizzy spell. From his recollection, Petty did not appear to be any more nervous than other suspects Dean had interviewed during his time in law enforcement.
¶ 17. Presented with these conflicting versions, the trial judge deemed Investigator Dean’s testimony more credible than Petty’s. After addressing Petty’s Miranda waiver, the trial judge reflected on the evidence and specifically found:
As far as the purported promises, that if you confess or give the statement, I’ll just see that you can go to East Mississippi [Correctional Facility] for maybe six months, or some place like that. Or, if you don’t, I will see how much time that you could get. So that has the promise on one hand and the threat on the other. So what is this about, as a fact finder? I think it’s all about credibility. And [defense counsel] artfully argues that this really gives rise to reasonable doubt during his full-bore cross-examination of Mr. Dean, where he had Mr. Dean — when it was suggested that he said, I’ll see how much time you could get, that it caused Mr. Dean to think a minute. And he thought a minute. And he thought further. And the further question was proffered, and I observed his demeanor, smelling the smoke of battle, being right here looking at him, frankly, I believe he was imminently honest, because he was trying to recollect something that, on September 29, [2010,] here we are in July of [2011]. And I think he was doing the best he could in trying to remember, but he hedged a little bit, maybe saying, well, I don’t know whether it was said or not. But in the total scheme of his conversation in cross-examination the first time then when he was brought back, and when he vehemently denied that — when you look at both of those, the Court is totally at peace as far as the truth and veracity of what happened and I believe he was imminently honest. I particularly believe that the seasoned officer did not even go near the making of any threat or offering any promise.
Based on these findings, the trial judge admitted Petty’s confession.
¶ 18. With respect to Petty’s argument, we note the voluntariness of a confession is not tested by merely deciding whether the State’s witness recalls discussion of a possible sentence. Rather, the State may meet its burden of establishing the voluntariness of a confession by offering testimony from someone with knowledge “that the confession was voluntarily *665 made without any threats, coercion, or offer of reward.” Collins, 97 So.3d at 1253 (¶ 20) (quoting Moore, 933 So.2d at 919 (¶ 30)). And here, Investigator Dean was steadfast that he did not threaten or coerce Petty. Nor did he testify that he offered Petty a reward of a lesser sentence for his confession. Faced with the conflicting testimony, the trial judge found Investigator Dean’s testimony “imminently honest.” As the judge saw it, “the seasoned officer did not even go near the making of any threat or offering any promise.”
¶ 19. Considering our particular review, the supreme court has been clear that when a trial judge expressly or even implicitly resolves the issue of admissibility of a confession against a defendant, the scope of appellate review is quite confined. Stokes v. State, 548 So.2d 118, 122 (Miss.1989). If the court applies the correct legal standards — as it did here — “we will not overturn a finding of fact made by a trial judge unless it [is] clearly erroneous.” Alexander v. State, 610 So.2d 320, 326 (Miss.1992) (citations omitted). “Where, on conflicting evidence, the court makes such findings, [appellate courts] generally must affirm.” Id.
¶ 20. While there was no doubt competing evidence, the trial judge applied the correct legal standard, and his decision was not clearly erroneous. Thus, we find Petty has not met the heavy burden of showing his confession was involuntary and should have been suppressed.
II. Sentencing
¶ 21. The judge sentenced Petty to thirty-five years in prison, -with thirty years to serve and five years suspended, followed by five years’ supervised probation. Petty was ordered to serve the entirety of the sentence without the possibility of parole. On appeal, Petty argues his sentence was greater than that authorized by law because section 97-3-101(3) does not expressly authorize day-for-day sentences and parole restrictions.
¶ 22. But Petty fails to consider Mississippi Code Annotated section 47 — 7—3(1)(b) (Rev.2011), which prohibits convicted sex offenders, like Petty, from being released on parole. Thus, his challenge lacks merit.
¶ 23. THE JUDGMENT OF THE NESHOBA COUNTY CIRCUIT COURT OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE, WITH THIRTY YEARS TO SERVE, FIVE YEARS SUSPENDED, AND FIVE YEARS OF SUPERVISED PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO NESHOBA COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR.

. The names of the victim and her parents have been changed to protect their identities.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. The State did not seek to admit the polygraph results, but did not object to the defense questioning Investigator Dean about the inconclusive test.