# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-01236-COA

PRESTON OVERTON                                                          APPELLANT

v.

STATE OF MISSISSIPPI                                                      APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/15/2013 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON JR. |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE JOHN R. HENRY JR. |
| DISTRICT ATTORNEY: | RONNIE LEE HARPER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF POSSESSION OF COCAINE AND SENTENCED TO FIFTEEN YEARS, AND CONVICTED OF POSSESSION OF A FIREARM BY A CONVICTED FELON AND SENTENCED TO TEN YEARS, WITH THE SENTENCES TO RUN CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED – 06/09/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., ISHEE AND MAXWELL, JJ.**

**ISHEE, J., FOR THE COURT**:

¶1.     On July 12, 2012, police searched Preston Overton's home in Natchez and found cocaine and a .38-caliber revolver on the dresser in his bedroom. A jury trial was held in the Adams County Circuit Court on March 15, 2013, and the jury found him guilty of possession

of cocaine and possession of a firearm by a convicted felon. Overton was sentenced to serve fifteen years for possession of cocaine and ten years for possession of a firearm, in the custody of the Mississippi Department of Corrections, with the sentences running consecutively. Overton appealed, asserting the following issues: (1) the circuit court erred in excluding two defense witnesses, and (2) Overton's trial attorney was constitutionally ineffective. Finding no error, we affirm.

**FACTS**

¶2. On July 12, 2012, Lieutenant George Pirkey and Deputy David Washington conducted a "knock and talk" at a house in Natchez after being informed that there was suspicious drug activity at the residence. The home belonged to Overton, who had inherited it from his grandmother when she passed away in 2009.

¶3. The witnesses' recollections of how the events played out on that day differed between the two police officers and Overton. Both Lt. Pirkey and Dep. Washington testified at trial that once they arrived at the house, they knocked on the door and Overton answered. He allowed the two officers to enter the house, and they explained the reason for their visit. At the time, Overton and his girlfriend, Christine Dunmore, were the only two people in the house. When asked if there was any illegal drug activity occurring at the house, Overton admitted that there was marijuana in the house. Lt. Pirkey noticed an ashtray sitting next to the couch containing "a roach from a blunt" that Overton said he and his girlfriend had smoked prior to the officers' arrival. Lt. Pirkey and Dep. Washington asked if they could search the home and gave Overton permission to refuse their request if he wished to do so,

2

but Overton consented to the search both verbally and in writing.

¶4. Once the consent was signed, Lt. Pirkey asked if Overton lived in the house alone, and he stated that he did, but that Dunmore stayed there sometimes. The two officers began searching the three-bedroom house and, in the first bedroom, they found several pieces of a white rock-like substance on the dresser, which field tested positive for powder cocaine. They also found a razor blade, a set of digital scales, and an H&R .38-caliber revolver, also on the dresser. The officers believed the room to be Overton's because they found some of his personal belongings, including documents with Overton's name and birth date on them.

¶5. Upon discovering the cocaine, Lt. Pirkey placed Overton under arrest. Overton was read his *Miranda* rights and taken to the police station. Once he was at the station, Overton submitted a written statement admitting that the marijuana and crack cocaine belonged to him.

¶6. When asked about the other two bedrooms, Lt. Pirkey testified that the second bedroom appeared to be a storage room, and it did not contain a bed or dresser. He then testified that the third bedroom appeared to belong to a female and contained a comforter, women's clothing, purses, and medication.

¶7. Overton, on the other hand, testified that on July 12, 2012, he and his girlfriend were sitting on the sofa watching television, when Lt. Pirkey and Dep. Washington entered his house without knocking. According to Overton, the two officers asked the whereabouts of Jeremy Page and his children, and Overton told them that Page was at the store and that his children were not there. Overton stated that Page had been renting a room at Overton's

house for $50 per month for three months. When questioned, both Lt. Pirkey and Dep. Washington claimed that they had never heard of Page, and they stated that Overton did not mention that Page lived in the house while they were searching it.

¶8.     When asked about the consent form that Overton had signed allowing the officers to search his house, Overton stated that he signed it because he was unaware that there were any drugs in the house. Overton maintained that the bedroom in which the officers found the cocaine and gun belonged to Page, not him. When asked why he signed the statement at the police station claiming ownership of the marijuana and cocaine, Overton testified that the officers threatened that either he or his girlfriend was "going to hold up for the drugs," and that if he did not sign the statement, they would go back and arrest Dunmore. Overton testified that the gun that was found had belonged to his grandmother, and he had never seen it before and had no idea it was in the house.

¶9.     The jury deliberated for forty-five minutes and returned a guilty verdict on both counts. Overton was sentenced to fifteen years for cocaine possession and ten years for possession of a firearm by a convicted felon, with the sentences running consecutively. On March 25, 2013, Overton filed a motion for a new trial in which he claimed that the circuit court erred in (1) excluding two key witnesses from testifying on his behalf, and (2) failing to grant Overton a continuance after excluding the witnesses. The circuit court judge denied the motion in an order dated May 1, 2013. Aggrieved, Overton appeals.

## DISCUSSION

### I. Exclusion of Two Defense Witnesses

¶10. On the eve of trial at 4:50 p.m., the defense filed a witness list containing the names of two material witnesses, Dunmore and Eunice Cheatham, who had not previously been disclosed to the State. The State objected because it had not learned of the two witnesses until the morning of trial. When asked about Dunmore and Cheatham's expected testimonies, the defense stated that Dunmore planned to testify as an eyewitness of the events that occurred at Overton's home during the police officers' search, and Cheatham, Overton's aunt, planned to testify that Page was renting a room in Overton's house and that the gun had belonged to Overton's grandmother. Both witnesses learned the day before the trial that they were expected to testify. After speaking with the potential witnesses, the State again objected to their testifying at trial because they were material witnesses and were not disclosed at an earlier date. The objection was sustained. As a result, the defense asked for a continuance, which was denied.

¶11. Overton argues that the circuit court abused its discretion and applied an incorrect legal standard in excluding Dunmore and Cheatham's testimonies, which irreparably prejudiced Overton. Although it is true that the defense failed to timely disclose to the State the names of the two witnesses, we disagree that the exclusion irreparably prejudiced Overton.

¶12. Overton admits to signing the consent form that allowed Lt. Pirkey and Dep. Washington to search his home. Overton further admits to signing the confession in which he confirmed that the cocaine and marijuana belonged to him.

¶13. Confessions are admissible when they are given voluntarily and are not the result of

5

promises, threats, or inducements. *Petty v. State*, 118 So. 3d 659, 662-63 (¶11) (Miss. Ct. App. 2013). The State bears the burden of proving beyond a reasonable doubt that a confession was given voluntarily before it will be admitted into evidence. *Id.* "The burden is met, and a prima facie case established, by the testimony of an officer . . . 'that the confession was voluntarily made without any threats, coercion, or offer of reward.'" *Collins v. State*, 97 So. 3d 1247, 1253 (¶20) (Miss. Ct. App. 2012) (quoting *Moore v. State*, 933 So. 2d 910, 919 (¶30) (Miss. 2006)).

¶14. During the trial, both Lt. Pirkey and Dep. Washington testified that Overton voluntarily signed the consent to search and voluntarily confessed that the drugs belonged to him. As such, the State met its burden in proving that Overton's actions were voluntary. With regard to the gun found, even if it had belonged to Overton's grandmother, she passed away in 2009, and the gun had been in Overton's home since that time. We find that, in light of his confession and the length of time that the gun had been in his home, Overton was not prejudiced by the exclusion of the two defense witnesses.

## II. Ineffective Assistance of Counsel

¶15. At trial, Overton was represented by Jeffery Harness and Carmen Brooks; however, for the appeal, Overton is represented by George Holmes. Overton argues that there is a "reasonable probability that but for Overton's trial counsel's neglect" in timely disclosing to the State Dunmore and Cheatham as defense witnesses, they could have testified and the jury would have reached a different result.

¶16. In order for this Court to review a claim of ineffective assistance of counsel on direct

appeal, "the record must affirmatively show that the defendant has been denied effective assistance of counsel." *Deloach v. State*, 977 So. 2d 400, 404 (¶17) (Miss. Ct. App. 2008). The record does not affirmatively demonstrate that counsel was ineffective; therefore, we affirm without prejudice to Overton's right to raise this issue in post-conviction-relief proceedings.

¶17. **THE JUDGMENT OF THE ADAMS COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF COCAINE, AND SENTENCE OF FIFTEEN YEARS, AND CONVICTION OF POSSESSION OF A FIREARM BY A CONVICTED FELON, AND SENTENCE OF TEN YEARS, WITH THE SENTENCES RUNNING CONSECUTIVELY TO EACH OTHER, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ADAMS COUNTY.**

    **LEE, C.J., AND CARLTON, J., CONCUR. IRVING AND GRIFFIS, P.JJ., ROBERTS, MAXWELL AND FAIR, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. BARNES, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**